UNITED STATES of America, Plaintiff-Appellee,

v.

FIVE HUNDRED THOUSAND DOLLARS, etc., et al., Defendant,

Arturo Fernandez, etc., Movant-Appellant.

No. 83–5220
Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

April 30, 1984.

Richard F. O'Brien III, Miami, Fla., for movant-appellant.

Robert A. Rosenberg, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, RONEY and TJOFLAT, Circuit Judges.

PER CURIAM:

The government instituted forfeiture proceedings against five different sums of money that were allegedly used to facilitate or resulted from drug transactions. The sums were seized on November 9, 1981, and a notice of the action was published in the *Miami Review* on November 25, 1981. The only individual whom the government personally served was Rafael Ujueta, the person who deposited the money in a Miami bank. However, the Marshal's Office returned the summons unexecuted and indicated that Ujueta had left the United States. After no one filed a claim to the money within thirty days, the district court entered a final default judgment and the funds in question were paid to the Federal Bureau of Investigation (FBI).

Nearly eight months later, appellant Fernandez filed a motion to set aside the default judgment. He claimed that he was in the business of exchanging international currencies and that he had suffered a serious financial loss when the FBI seized two of the sums of money, a $500,000 amount and a $400,000 amount. The district court denied the motion to set aside the default judgment, finding that Fernandez was not the "owner" of the funds and thus had no standing to claim them. Similarly, the district court denied Fernandez' subsequent Fed.R.Civ.P. 59 motion to vacate its earlier ruling. Fernandez appeals both rulings.

The undisputed circumstances surrounding the forfeiture are as follows. The FBI was conducting a "sting" operation to investigate the laundering of drug money through Miami banks. It established a company called C.R.V. with a bank account in the name of Uniworld Holdings at a Miami bank. Drug dealers would deposit money in Uniworld's account and give Uniworld instructions to wire the money to other bank accounts throughout the country or to issue cashier's checks. On various occasions, Ujueta brought sums of money in cash to make use of C.R.V.'s Uniworld account.

With respect to the $500,000, Ujueta brought the money to the bank and instructed C.R.V. to wire the funds to Fernandez' company's account at a New York City bank. C.R.V. deposited the money in its Uniworld account and instructed the bank to wire the funds to the New York bank. For reasons not disclosed by the record, the wire transfer was never executed, however; C.R.V. subsequently told the bank to cancel the transfer, and the FBI seized the $500,000.

Before the seizure of the $500,000 took place, Ujueta brought $400,000 in cash to C.R.V. and instructed it to have four cashier's checks in the amount of $100,000 issued. C.R.V. gave Ujueta the cashier's

checks but he returned on the following day and asked C.R.V. to exchange them for two cashier's checks payable to different persons. C.R.V. took the four checks back but never reissued any others. The $400,000 was then seized.

Fernandez is a money changer who buys U.S. dollars with pesos by having the seller transfer U.S. funds to Fernandez' New York bank account. Then Fernandez or his company, Inversal, issues the seller a check in pesos from a Colombian bank. In this case, Fernandez relied upon a representation that the $900,000 had been transferred by wire to his New York bank account and paid out that sum in pesos. He therefore suffered a loss.

Fernandez argued that an affidavit to this effect filed with the district court established his standing to contest the default judgment. He also included a copy of the transfer order originally issued by C.R.V. and Uniworld instructing the Miami bank to transfer the $500,000 sum to his New York account and copies of two telexes from the New York bank indicating that the $500,000 was never received.

■ On appeal, Fernandez argues (1) that the district court should have had an evidentiary hearing on the issue of standing; (2) that he had standing; and (3) that the district court erred in entering the default judgment because Fernandez was not given actual notice of the forfeiture proceeding despite the fact the FBI knew he had an interest in the funds. Because we find that Fernandez alleges no facts sufficient to confer standing, we affirm the decision of the district court.

"[A] party seeking to challenge the government's forfeiture of money or property used in violation of federal law must first demonstrate an interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture." *United States v. $364,960.00 in U.S. Currency*, 661 F.2d 319, 326 (5th Cir. Unit B 1981);[1] *see also, United States v. Currency Total-*

*ling $48,318.08*, 609 F.2d 210, 213–14 (5th Cir.1980). One must claim an ownership or possessory interest in the property seized. *United States v. $15,500.00*, 558 F.2d 1359, 1361 (9th Cir.1977). The burden of establishing standing in forfeiture proceedings is on the claimant. *See United States v. $364,960.00 in U.S. Currency*, 661 F.2d at 326.

■ In the district court, Fernandez asserted an "interest" in the money arising from the fact that he would have earned a commission on making the exchange. While in his affidavit, Fernandez alleges that he suffered a loss of $900,000, he did not allege that he actually owned the cash which Ujueta deposited. In fact, in a related action, Fernandez' counsel stated that neither Fernandez nor Inversal owned the funds. In his brief on appeal, Fernandez argues that he was an "owner" of the $500,000 because the wire transfer order had been made out. However, it is undisputed that the transfer order was never executed and the funds never reached Fernandez' New York bank account. Furthermore, even though the four cashier's checks had been endorsed over to Inversal, the New York bank rejected them for lack of substantiation and they were never credited to Fernandez' bank account. Ujueta returned the checks to the Miami bank and requested two different checks but they were never issued. Clearly, the $400,000 was in the possession of the Miami bank the entire time and the only persons who had an interest or owned it were the persons who had Ujueta deposit it. These persons have not come forward.

The essence of Fernandez' argument is that his questionable business practice of paying out money for a product he had not yet received (the $900,000) gave him an equitable interest in the product. While a bona fide purchaser of seized property may have standing to protest its forfeiture, *United States v. One 56-Foot Yacht*

---

**1.** *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Named Tahuna,* 702 F.2d 1276, 1279 (9th Cir.1983), Fernandez never submitted any evidence (i.e. cancelled checks or receipts) showing he actually bought the $900,000 seized with the $900,000 he apparently expended. Fernandez may well have a chose in action against either the people to whom he disbursed the $900,000 in pesos, or the people who represented to him that the wire transfer had taken place. He has no interest in the seized funds sufficient to confer upon him standing to reopen the default judgment, however.

The district court did not fail to hold an evidentiary hearing on the issue of standing as there were no questions of fact to be resolved. Fernandez never alleged any facts to the district court that were materially different from those set forth by the United States. As only an issue of law was before the district court, there was no reason for it to hold an evidentiary hearing. On appeal, Fernandez states that because the district court held no evidentiary hearing, he was not afforded an opportunity to present exhibits showing his ownership of the funds to the district court. This is untrue as he had ample opportunity to attach these as exhibits to his motions in the district court, but failed to do so.

In summary, the district court had no duty to conduct an evidentiary hearing on the issue of Fernandez' standing to reopen the default judgment, and Fernandez has not alleged a sufficient interest in the funds to give him such standing. Since Fernandez did not have standing, the district court did not abuse its discretion in denying Fernandez' motions seeking the reopening of the default judgment.

AFFIRMED.