UNITED STATES of America, Plaintiff,

v.

**ONE (1) 1983 HOMEMADE VESSEL NAMED BARRACUDA, Official No. 662483 with its tackle, apparel and equipment, Defendant.**

### No. 85–2089–CIV–EPS

United States District Court,
S.D. Florida,
Miami Division.

Jan. 14, 1986.

Lynn D. Rosenthal, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Rhea Grossman, Miami, Fla., for defendant.

## MEMORANDUM OPINION

SPELLMAN, District Judge.

### I

This CAUSE came before the Court for a non-jury trial. The Plaintiff, the United States of America, seeks civil forfeiture of the Defendant, Vessel, predicated upon alleged violations of 19 U.S.C. § 1595a, 49 U.S.C. § 781, 21 U.S.C. § 881, and 19 U.S.C. § 1703. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355. This Court concludes that the Defendant,

Vessel, should be forthwith forfeited to the United States.

### A. PROCEDURAL BACKGROUND

The Plaintiff, the United States of America, filed a Complaint for Forfeiture *in Rem*, alleging that on or about December 22, 1984, Officers of the United States Customs Service at Key West, Florida seized One (1) 1983 Homemade Vessel named Barracuda, Official No. 662483, with its tackle, apparel and equipment. The Plaintiff alleged that said Vessel was used and/or attempted to be used for the facilitation and/or transportation and/or bringing in of approximately 2,000 pounds of marijuana into the commerce of the United States, and that a secret compartment for the purpose of smuggling was built into the Defendant, Vessel.

The Claimant, Estrella Soria, filed her Answer and Affirmative Defenses to the Complaint for Forfeiture *in Rem* alleging an interest in the Defendant, Vessel, as its lawful owner. The Claimant also alleged that she had no knowledge of the Vessel's use in transporting contraband and that she is an innocent owner in these proceedings. The Claimant further defended the action on the basis that the Government had not established probable cause for the seizure.

### B. FACTS

The factual scenario for this action began on December 21, 1984 when the United States Coast Guard Cutter Shearwater was on patrol and noticed radar contact in the international waters, the Great Bahama Bank. The Shearwater intercepted the radar contact and spotted the Vessel, Barracuda. The Officers noticed that the Barracuda had only sidelights and that it was riding down by the bow. Lt. M.C. Cosenza and three other Coast Guard Officers, boarded the Barracuda pursuant to 14 U.S.C. § 89.[1] The Officers received con-

---

1. 14 U.S.C. § 89(a) provides:

   The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violation of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the

sent and conducted a search of the Vessel. The Coast Guard Officers found fiberglass resin on the boat, acetone fiberglass on the fuel tanks, excess water tanks on board, and extraordinarily large fuel tanks. By the time the Officers had completed the safety and documentation check, they found five violations of the United States Marine laws and regulations. These included (1) no main beam number, (2) no hailing port displayed, (3) no bell, (4) no throwable device, and (5) a marine sanitation lacking Coast Guard approval. The Officers examined the Immigration and Naturalization documents for the two men who were on board the Barracuda. The documentation revealed that neither of the men were United States citizens and that both of the men had been in Colombia as late as December 14, 1984. During this initial search, the Officers did not discover the contraband.

When the Officers checked with the mainland, they learned that Leoner Jimenez, the alleged master of the vessel, was out of the Southern District of Florida, in violation of his bond pending trial for drug-related crimes. Mr. Jimenez was arrested and the Barracuda, without a United States Master and only one crew member remaining, was towed into Key West, Florida.

Once in port in Key West, the United States Customs Officers in conjunction with the Coast Guard conducted a full border search pursuant to 19 U.S.C. § 1581(a).[2] The search disclosed two hidden compartments affixed to the bottom of the vessel. They measured approximately 15' by 4' by 3'. The Customs agents cut through these aluminum containers and found 2,008 pounds of marijuana. The marijuana field tested positive. Leoner Jimenez and Modesto Maza were arrested and charged with drug crimes.

The Barracuda's documentation showed Estrella Soria to be the owner of the Vessel. In April 1984, she purchased the Barracuda for $25,000.00. It was established at trial that she paid the monies on two separate dates so she could obtain the highest rate of interest for the certificates of deposit she had to cash. Mrs. Soria testified that she originally purchased the Barracuda to use it herself for fishing. Later, she realized that if she ever decided to sell the Vessel, she could probably obtain a good price for it. Mrs. Soria testified that the boat was inspected by a mechanic, who also testified at trial, to ascertain the seaworthiness and value of the Vessel she was purchasing. Mrs. Soria did not insure the boat. She testified at trial that she failed to do so because of the forbidding cost of the insurance.

Mrs. Soria left the boat docked at Defender Yacht. She testified at trial that she periodically checked on the Vessel while it was docked there. During a period of time in which she was looking to sell the Vessel, she leased it instead. Mrs. Soria testified that she decided to lease the Barracuda to Antonio Herrera, an individual

operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance. When from such inquiries, examination, inspection, or search it appears that a breach of the laws of the United States rendering a person liable to arrest is being, or has been committed, by any person, such person shall be arrested, or, if escaping to shore, shall be immediately pursued and arrested on shore, or other lawful and appropriate action shall be taken; or, if it shall appear that a breach of the laws of the United States has been committed so as to render such vessel, or the merchandise, or any part thereof, on board of, or brought into the United States by, such vessel, liable to forfeiture, or so as to render such vessel liable to a fine or penalty and if necessary to secure such fine or penalty, such vessel or such merchandise, or both, shall be seized.

2. 19 U.S.C. § 1581(a) provides:
Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters or, as he may be authorized, within a customs-enforcement area established under the Anti-Smuggling Act, or at any other authorized place, without as well as within his district, and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.

she had known for many years and who had been her tenant for over five years. The agreement between Mrs. Soria and Mr. Herrera was oral. She testified that there was no written lease because she did not wish to be bound by a written document if she subsequently found a purchaser. The terms of the agreement were that Mr. Herrera would pay $1,000 per month, in cash. He did not pay for storage or for insurance.

Mrs. Soria testified that she knew nothing of any arrangement between Mr. Herrera and Mr. Jimenez, nor did she suspect that her vessel was being used for the transportation of illegal substances. It was established at trial that during the period of time in which the events took place, Mrs. Soria was forced to leave Florida and travel to New York to attend to illness in her family. Upon her return, she discovered that the boat was missing. Mrs. Soria did admit to being aware that narcotics are smuggled into the South Florida area aboard fishing vessels, but stated that it never occurred to her that this would happen to her Vessel.

It was never established at trial exactly when the secret compartments were affixed to the boat. Mrs. Soria claimed that she had no knowledge of any such compartments when she purchased the Vessel. The government attempted to establish that the secret compartments were fitted to the hull when the boat was constructed and that they could not have been the result of subsequent modification. Their alleged expert, however, a Custom's Officer, who had no expertise in boat construction, was not qualified to give such an opinion. When this Court impressed upon the government their failure to qualify the Custom's Officer as an expert, they did not then produce a bona fide expert who could give an opinion as to when the compartments were fitted onto the Vessel.

## II

### A. STANDING

■ A forfeiture proceeding is an *in rem* action brought against seized property pursuant to the fiction that the property itself is guilty of facilitating the crime. *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 680–4, 94 S.Ct. 2080, 2090–92, 40 L.Ed.2d 452 (1977).

■ To contest a forfeiture action, an individual must first demonstrate an interest in the seized property sufficient to satisfy the court of his or her standing as a claimant. *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars in U.S. Currency,* 661 F.2d 319, 326 (5th Cir.1981). The burden of establishing standing is on the claimant. *United States v. Five Hundred Thousand Dollars,* 730 F.2d 1437, 1439 (11th Cir. 1984). One must claim an ownership or possessory interest in the property seized. *Id.* Ownership may be established by proof of actual possession, control, title, and financial stake. *United States v. One 1945 Douglas C–54 (DC–4) Aircraft,* 647 F.2d 864, 866 (8th Cir.1981). The possession, however, of bare legal title by an individual who does not exercise dominion and control over the property is insufficient to establish ownership. *United States v. One 1945 Douglas C–54 (DC–4) Aircraft,* 604 F.2d 27, 28 (8th Cir.1979).

■ Estrella Soria has demonstrated an interest in the Defendant, Vessel, sufficient to satisfy this Court of her standing as Claimant to contest the forfeiture. The Barracuda's documentation showed Estrella Soria to be the owner of the Vessel. It has also been shown that she exercised dominion and control over the property sufficient to establish her ownership. No evidence has been produced that would indicate that she is merely a "nominal owner."

### B. PROBABLE CAUSE

■ In a forfeiture proceeding, the government bears the initial burden of proof as it must show probable cause for the institution of the suit. 21 U.S.C. § 881(d); 49 U.S.C. § 784; *United States v. One 1971 Chevrolet Corvette Automobile,* 496 F.2d 210, 212 (5th Cir.1974). *See also, United States v. One (1) 1982 28′ International Vessel,* 741 F.2d 1319, 1321 (11th

Cir.1984). Probable cause is defined as a reasonable ground for belief of guilt supported by less than prima facie proof, but more than mere suspicion. *United States v. One 1978 Chevrolet Impala*, 614 F.2d 983, 984 (5th Cir.1980); *United States v. One 1975 Ford F100 Pick-up Truck*, 558 F.2d 755, 756 (5th Cir.1977).

■ The government had probable cause to seize the Defendant Vessel and institute this forfeiture suit. When the government seized the Barracuda, a United States Customs search revealed 2,008 pounds of marijuana located in two hidden compartments attached to the bottom of the Vessel. The Defendant, Vessel, did facilitate the receipt, possession and concealment of a controlled substance and contraband article in violation of 19 U.S.C. § 1595a, 21 U.S.C. § 881, and 49 U.S.C. § 781. This Court therefore concludes that the United States has met its burden of establishing probable cause for the seizure of the vessel and the institution of the forfeiture action.

■ The Claimant has also questioned the legality of the search itself. The exclusionary rule applies to forfeiture proceedings, so probable cause for forfeiture cannot rest upon tainted evidence. *United States v. One 1979 Mercury Cougar XR–7*, 666 F.2d 228, 230 (5th Cir.1982). However, searches at our borders by Customs agents without probable cause and without a warrant are reasonable and do not violate the fourth amendment. *United States v. Ramsey*, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977). The United States Customs Officers conducted a full border search pursuant to 19 U.S.C. § 1581(a). Moreover, when the United States Coast Guard Cutter Shearwater initially intercepted the Vessel, Barracuda, in the international waters and boarded the Vessel pursuant to 14 U.S.C. § 89, they received consent prior to conducting a search of the Vessel. This warrantless boarding and search of the Barracuda was Constitutional because it was conducted pursuant to consent, *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and such was granted by an individual with apparent authority to issue consent, *United States v. Carter*, 569 F.2d 801, 804 (4th Cir.1977). In sum, under the circumstances of this case, the search of the Barracuda was both reasonable and lawful.

## C. INNOCENT OWNERSHIP

■ Once the government establishes probable cause, the burden of proof shifts to the Claimant to prove a defense to to the forfeiture. 19 U.S.C. § 1615; *United States v. One 1975 Ford F100 Pick-up Truck*, 558 F.2d 755, 756 (5th Cir.1977); *United States v. One 1971 Chevrolet Corvette Automobile*, 496 F.2d 210 (5th Cir. 1974). The Claimant must prove a defense by a preponderance of the evidence. *Ford F100 Pick-up Truck*, 558 F.2d at 756.

■ Innocence of the Claimant, in and of itself, is an insufficient defense to forfeiture. *United States v. One 1957 Rockwell Aero Commander 680 Aircraft*, 671 F.2d 414, 417 (10th Cir.1982); *see also Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 683–90, 94 S.Ct. 2080, 2091–95, 40 L.Ed.2d 452 (1974). To prevail on the defense of innocence, Claimants must establish that 1) they were not involved in the wrongful activity, 2) they were not aware of the wrongful activity, and 3) they had done all that reasonably could be expected to prevent the proscribed use of their property. *Id.* at 689, 94 S.Ct. at 2094; *United States v. One (1) 1982 28' International Vessel*, 741 F.2d 1319, 1322 (11th Cir.1984).

■ This Court finds that the Claimant has established the defense of innocence by a preponderance of the evidence. First, Mrs. Soria was not involved in the wrongful activity. Second, Mrs. Soria was not aware of the wrongful activity. There has been no showing that Mr. Herrera had a questionable background, one that would cause Mrs. Soria to suspect that he would allow the boat to be used for illegal purposes. In addition, no evidence was presented to this Court to even suggest that Mrs. Soria knew about an arrangement between Mr. Herrera and Mr. Jime-

nez. Moreover, with regard to the very structure of the boat itself, the government failed to show that the Claimant had any knowledge of the secret compartments affixed to the hull. In fact, there still remains an uncertainty as to when these compartments were attached to the Barracuda. In its effort to prove that the containers had to have been part of the original construction of the Vessel, the government attempted to introduce the testimony of a Custom's Officer. When this Court informed the government that the Custom's Officer was not qualified to give an opinion on the construction of boats, they failed to supply another expert. In sum, it could not be ascertained whether the compartments were part of the Barracuda that Mrs. Soria purchased or were the result of subsequent modification. Nor could it be established that she noticed the secret compartments or that she even should have noticed them.

Finally, this Court is persuaded that Mrs. Soria has met the third and final element within the defense of innocent ownership. Mrs. Soria has done all that reasonably could be expected to prevent the proscribed use of her property. When she had leased the Barracuda to Antonio Herrera, she had already known him for several years. She had no reason to believe from her prior dealings with him or otherwise that he would allow her boat to be used for drug smuggling. Moreover, there was nothing in the evidence presented to this Court to even suggest that Mrs. Soria had any knowledge of an arrangement between Mr. Herrera and Mr. Jimenez or that she even knew of the existence of a Mr. Jimenez.

At trial and in their memoranda, the government reiterated and underscored the language in *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 686–88, 94 S.Ct. 2080, 2093–94, 40 L.Ed.2d 452 (1974):

> Forfeiture of conveyances that have been used—and may be used again—in violation of the narcotics laws fosters the purposes served by the underlying criminal statutes, both by preventing further illicit use of the conveyance and by imposing an economic penalty, thereby rendering illegal behavior unprofitable.... To the extent that such forfeiture provisions are applied to lessors, bailors, or secured creditors who are innocent of any wrongdoing, confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property.

This Court has taken note of the legitimate governmental interests served by forfeiture statutes. Nevertheless, such provisions which serve to encourage owners to take the necessary precautionary measures before leasing their property are not designed to immobilize all transferences of property or to propel human beings beyond the parameters of reasonable behavior.

This Court cannot be persuaded that an elderly woman, a relative newcomer to this country, a seamstress by trade, must suddenly acquire the sophistication of a private investigator just because she wants to rent out her fishing boat. Nor is it reasonable to expect Mrs. Soria to conduct an exhaustive search of the background and character of an individual whom she has known for years and with whom she has always had fair dealings. Subsequent to leasing the Barracuda to Mr. Herrera, she did all that reasonably could be expected to prevent the proscribed use of her property. She checked on the boat periodically. She maintained contact with her lessee. In fact, the only hiatus in communications between herself and Mr. Herrera and in the supervision of her Vessel was the period in which she had to go to New York to attend to illness in her family. This trip was unequivocally established at trial.

It was also clear that upon her return the boat appeared to be missing and that this was around the time the Barracuda was intercepted in international waters. Mrs. Soria, who was not involved in or aware of the wrongful activity and who took all the reasonable steps to prevent a proscribed use of her Vessel, has established the defense of innocent ownership.

## D. VIOLATION OF 19 U.S.C. § 1703

■ In a more unexceptional forfeiture case, an application of 19 U.S.C. § 1703 is inconsistent with a finding of innocent ownership because the Claimant either knew about the compartment, *United States v. One (1) 1984 # 1 Boat Mfg. Lobster Vessel*, 617 F.Supp. 672, 679 (S.D.Fla.1985), or actually constructed the vessel to smuggle merchandise into the United States, *United States v. One (1) Defender Lobster Vessel Named Betty II*, 606 F.Supp. 32, 36–37 (S.D.Fla.1984). This case raises a novel question, one of first impression in this district: whether an innocent owner is entitled to the return of a vessel constructed to smuggle merchandise into the United States in violation of 19 U.S.C. § 1703. This the Court answers in the negative.

19 U.S.C. § 1703 is clear on its face. It provides:

> Whenever any vessel which shall have been built, purchased, fitted out in whole or in part, or held, in the United States or elsewhere, for the purpose of being employed to defraud the revenue or to smuggle any merchandise into the United States, or to smuggle any merchandise into the territory of any foreign government in violation of the laws there in force, if under the laws of such foreign government any penalty or forfeiture is provided for violation of the laws of the United States respecting the customs revenue, or whenever any vessel which shall be found, or discovered to have been, employed, or attempted to be employed, within the United States for any such purpose, or in anywise in assistance thereof, or whenever any vessel of the United States which shall be found, or discovered to have been employed, or attempted to be employed at any place, for any such purpose, or in anywise in assistance thereof, if not subsequently forfeited to the United States or to a foreign government, is found at any place at which any such vessel may be examined by an officer of the customs in the enforcement of any law respecting the revenue, the said vessel and its cargo shall be seized and forfeited.

This Court concludes that the Barracuda, at some point, was constructed to smuggle merchandise into the United States in violation of 19 U.S.C. § 1703, as evidenced by the presence of a secret compartment. A false or secret compartment is a prospective storage area that is not apparent to the average user of a conveyance and serves no legitimate function. *See United States v. One (1) 1984 # 1 Boat Mfg. Lobster Vessel Known as M/V Sea Power*, 617 F.Supp. 672, 679 (S.D.Fla.1985). The unusual location of the two hidden compartments attached to the bottom of the vessel which measured 15′ by 4′ by 3′ demonstrates that it was built in such a way as to remain hidden from view. In addition, 2,008 pounds of marijuana were found in the secret compartments.

The proper application of 19 U.S.C. § 1703 renders a vessel outfitted with hidden or false compartments forfeited to the United States independent of any use to which the *res* has been put. The vessel itself, like a sawed-off shotgun, or like explosives, is contraband. Once such a secret compartment is discovered, and the violation proven, the vessel is thereby forfeited to the United States. The Court cannot, in this context, sanction the return of contraband. To do so would defy the plain language of 19 U.S.C. § 1703 and thwart the intent of Congress to halt the flow of illicit narcotics into the country. To order the return of a vessel whose existence on the waterways and seas is a violation of the law also frustrates a legitimate remedial purpose of forfeiture, the prevention of the continued use of a conveyance which has been used, and could, in all likelihood, be used again in the commission of a crime. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 686–87, 94 S.Ct. 2080, 2093–94, 40 L.Ed.2d 452 (1974).

The Claimant herein seeks to evoke the equity of the Court and have the Vessel's return to her conditioned upon its repair and alteration. This Court does not hesitate to reiterate that it is not within its jurisdiction to order the government to give back a boat with two false compartments

beneath the hull that are suitable solely for smuggling illegal substances or to order the alteration of the Vessel so that it will conform to the dictates of the law. There is, however, nothing to prevent the government and the Claimant from negotiating amongst themselves for the excision of the compartments, for the repair of the boat, and for the ultimate return of a seaworthy vessel. However, this Court will not intervene to compel the release of contraband or to administer the transformation of the Barracuda.

### III

In conclusion, pursuant to 19 U.S.C. § 1703, the Plaintiff, the United States of America, is entitled to a judgment of forfeiture. The Plaintiff is hereby directed to submit to this Court within ten (10) days from the date of this Order a Final Judgment in accordance with the same.