**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**ONE (1) 1983 HOMEMADE VESSEL NAMED "BARRACUDA," etc., Defendant,**

**Estrella Soria, Claimant–Appellant.**

**No. 86–5383.**

United States Court of Appeals, Eleventh Circuit.

Sept. 30, 1988.

Rhea P. Grossman, Miami, Fla., for claimant-appellant.

Dexter W. Lehtinen, Lynn D. Rosenthal, Sonia Escobio O'Donnell, Nancy L. Worthington, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT and EDMONDSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

This case is a forfeiture proceeding under 19 U.S.C. § 1703(a) (1982).[1] The district court ordered a vessel outfitted and used to smuggle marijuana forfeited to the United States over the objection of the vessel's owner, who contended that she was "innocent," i.e., that she did not know the vessel had been outfitted and used to smuggle marijuana and that she had done

---

1. Section 1703(a) provides:

Whenever any vessel which shall have been built, purchased, fitted out in whole or in part, or held, in the United States or elsewhere, for the purpose of being employed to defraud the revenue or to smuggle any merchandise into the United States, or to smuggle any merchandise into the territory of any foreign government in violation of the laws there in force, if under the laws of such foreign government any penalty or forfeiture is provided for violation of the laws of the United States respecting the customs revenue, or whenever any vessel which shall be found, or discovered to have been, employed, or attempted to be employed, within the United States for any such purpose, or in anywise in assistance thereof, or whenever any vessel of the United States which shall be found, or discovered to have been, employed, or attempted to be employed at any place, for any such purpose, or is anywise in assistance thereof, if not subsequently forfeited to the United States or to a foreign government, is found at any place at which any such vessel may be examined by an officer of the customs in the enforcement of any law respecting the revenue, the said vessel and its cargo shall be seized and forfeited.

everything within reason to prevent such use. The owner appeals, asking us to set aside the forfeiture order on the ground that the order authorized the taking of private property for a public purpose without just compensation in violation of the fifth amendment. We affirm.

## I.

The vessel subject to forfeiture in this case, the *Barracuda,* is a thirty-nine-foot, homemade fishing boat, built in 1983.[2] Estrella Soria, the appellant, bought it in south Florida in April 1984 for $25,000 in cash. Soria, an elderly lady and a seamstress by trade, claims to have purchased the vessel for her personal use—to go fishing. Soon after purchasing the *Barracuda,* however, she chartered the vessel to an acquaintance, Antonio Herrera, for $1000 a month. Herrera, in turn, entrusted the *Barracuda* to Leoner Jiminez.

On the night of December 21, 1984, the United States Coast Guard cutter *Shearwater* spotted the *Barracuda* in international waters off the Great Bahama Bank; her bow was riding unusually low in the water and she was displaying only sidelights. Pursuant to the authority granted the Coast Guard by 14 U.S.C. § 89(a) (1982), the *Shearwater's* captain decided to board the *Barracuda* to conduct a routine inspection. The *Shearwater* drew alongside the *Barracuda,* and a party of Coast Guard officers came aboard. They were met by two men: Leoner Jiminez, who identified himself as the vessel's captain, and Modesto Meza, the vessel's only crewman. The officers asked Jiminez if they could search the vessel, and he gave them permission to do so. During their search, they noticed that the *Barracuda's* fuel tanks were extraordinarily large and were covered with acetone fiberglass, and that she had excess water tanks. They also noticed several violations of maritime laws and regulations.

In identifying themselves to the officers, Jiminez and Meza gave them some "immigration papers"; these papers disclosed that Jiminez and Meza were not citizens of the United States and that they had been in Colombia, South America seven days before. The officers radioed the mainland and learned that Jiminez was awaiting trial in the United States District Court for the Southern District of Florida on several drug related offenses and had been admitted to bail on condition that he stay within the district. They placed Jiminez under arrest for violating that condition and towed the *Barracuda,* which was then without a master, to Key West, Florida. There, United States Customs officers, conducting a full border search pursuant to 19 U.S.C. § 1581(a) (1982), found over two thousand pounds of marijuana concealed in two secret compartments in the vessel's hull.

Based on the results of this border search, the Government commenced this *in rem* forfeiture action in the district court. The Government brought the proceeding under 19 U.S.C. § 1703(a) (1982), which provides that any vessel that has been "fitted out" or "held" for the purpose of smuggling contraband "shall be seized and forfeited" to the United States.[3] Soria, because she was the owner of the *Barracuda,* received notice of the forfeiture proceeding, and she subsequently appeared, filing an answer. In her answer, Soria, citing *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), alleged that forfeiture could not lie because (1) she did not know that the vessel carried secret compartments in her hull and had been used to smuggle marijuana into the United States and (2) she had acted reasonably to prevent such use.

The district court convened a bench trial on the matter. At the trial, the Government established a prima facie case for

---

**2.** The transcript of the forfeiture hearing in the district court was not made a part of the record on appeal. *See generally* Fed.R.App.P. 10(b)(1). We rely on the district court's findings of fact and conclusions of law contained in its disposi-

tive memorandum opinion to decide that appellant failed to make out a case of innocent ownership. *See infra* part II.B.

**3.** *See supra* note 1.

forfeiture under section 1703(a). Soria, in defense, explained her innocence. She testified that she had known Herrera favorably for many years and trusted him; she had no reason whatever to suspect that he might be involved in drug smuggling. After he took possession of the *Barracuda,* she spoke with him frequently; on occasion, she checked on the vessel at the dock where Herrera was keeping it. Soria was well aware that fishing vessels like the *Barracuda* were commonly used to smuggle drugs into south Florida, but she insisted that nothing occurred while Herrera had possession of the boat that led her to suspect that he might be using it for that purpose.

In an attempt to rebut her claim of innocence, the Government offered the testimony of a Customs officer who was of the opinion that the *Barracuda's* secret compartments had been fitted into its hull at the time of its construction. The court, however, rejected the testimony on the ground that the officer had no expertise in boat construction and therefore was not qualified to give such an opinion.

In its memorandum opinion issued subsequent to the trial, the court concluded that Soria met the three-pronged test of innocent ownership prescribed by the Supreme Court in *Calero–Toledo,* stating that Soria (1) "was not involved in the wrongful activity," (2) "was not aware of the wrongful activity," and (3) "ha[d] done all that reasonably could be expected to prevent the proscribed use of [her] property." 625 F.Supp. 893.

The court permitted Soria to establish the third prong of the *Calero–Toledo* test—that she had acted reasonably under the circumstances—without explaining the presence of the secret compartment in the *Barracuda's* hull. In the court's view, the Government had the burden of proof on that issue; the Government had to show when the compartments were constructed

and that Soria knew of their existence. The evidence established neither point to the court's satisfaction. As a result, the court treated Soria as having no actual or constructive knowledge of the compartments.

Having found that Soria was an innocent owner and thus entitled, under *Calero–Toledo,* to the possession of the *Barracuda,* the court nonetheless forfeited the vessel to the Government. The court did so because it felt that "it [was] not within its jurisdiction to order the government to give back a boat with two false compartments beneath the hull that are suitable solely for smuggling illegal substances or to order the alteration of the Vessel so that it will conform to the dictates of the law."

Soria now appeals. She raises one issue: whether forfeiture under the facts of this case constitutes the taking of private property for public use without just compensation.

## II.

### A.

■ Before we address Soria's argument, we must determine whether we still have jurisdiction over this controversy. The *Barracuda* now lies at the bottom of Biscayne Bay. When Soria failed to supersede the district court's judgment by posting a bond as provided by Fed.R.Civ.P. 62(d), the United States Marshal for the Southern District of Florida, who had custody of the vessel, released the *Barracuda* to the United States Customs Service as directed by the final judgment. Customs decided to exercise its authority under 19 U.S.C. § 1705 (1982)[4] and destroy the vessel. It gave the task of destroying the *Barracuda* to the Dade County, Florida Department of Environmental Resource Management, which was constructing a reef in Biscayne Bay and was seeking ma-

---

4. Section 1705 provides:
    Any vessel or vehicle forfeited to the United States, whether summarily or by a decree of any court, for violation of any law respecting the revenue, may, in the discretion of the Secretary of the Treasury, if he deems it nec-

essary to protect the revenue of the United States, be destroyed in lieu of the sale thereof under existing law.
  In this case, the Secretary directed Customs to destroy the forfeited vessel.

terial for the reef. While the parties were briefing this appeal, a work crew from the Department piled five thousand pounds of concrete onto her deck, and sent her to the bottom of the bay.

■ A court's power to exercise its *in rem* jurisdiction "derives entirely from its control over the defendant *res.*" *United States v. One Lear Jet Aircraft,* 836 F.2d 1571, 1573 (11th Cir.) (en banc), *cert. denied,* — U.S. —, 108 S.Ct. 2844, 101 L.Ed.2d 881 (1988). Such control ceases to exist, and *in rem* jurisdiction fails, when the *res* leaves the court's territorial jurisdiction.[5]

The Biscayne Bay lies within the Southern District of Florida; hence, the *Barracuda* is still within the territorial jurisdiction of the district court and, thus, of this court. The Government suggests, however, that the *Barracuda*'s physical alteration has been such that we should treat the vessel as if it has been removed from the court's territorial jurisdiction; we should do so because Soria, if she were to prevail in this appeal, will find it exceedingly difficult, if not impossible, to salvage her boat.

■ That Soria would be able to salvage little, if anything, from the *Barracuda* is of no moment.[6] We believe that once *in rem* jurisdiction has attached, it is not defeated solely because a physical change occurs in the *res.* In sum, we have the power to decide this controversy.

### B.

■ *Calero–Toledo* places "a heavy burden of proof" upon an owner of property who seeks to avoid forfeiture on the ground that he is an innocent party and that forfeiture in his case would serve no legitimate governmental purpose. *United States v. One (1) 1982 28' Int'l Vessel,* 741 F.2d 1319, 1322 (11th Cir.1984). It is not

enough that the owner prove that he was entirely free of any involvement in or knowledge of the unlawful conduct. He must do more; he must demonstrate that he did everything he reasonably could have done to avoid having his property put to an unlawful use.

■ The owner in *Calero–Toledo* failed to carry the day even though it put on a compelling case of innocence. In that case, the owner, Pearson, was a yacht leasing firm which leased pleasure yachts throughout the United States and in Puerto Rico. It had leased a yacht to two Puerto Rican residents under a lease which "specifically prohibited [the] lessee[s] from using the leased property for an unlawful purpose." *Pearson Yacht Leasing Co. v. Massa,* 363 F.Supp. 1337, 1340 (D.Puerto Rico 1973). Fourteen months later, one of the lessees ignored this prohibition and brought marijuana aboard the yacht; he did so, of course, without Pearson's knowledge or approval. The Puerto Rican police discovered the marijuana and seized the yacht pursuant to a statute which made subject to forfeiture to the Commonwealth of Puerto Rico any vessel "used ... to transport, or ... facilitate the transportation, sale, receipt, possession or concealment of" any controlled substance, including marijuana. P.R. Laws Ann. Tit. 24, § 2512(a)(4) (1972). Following an administrative proceeding, which was held without notice to the owner, the yacht was forfeited to the Commonwealth of Puerto Rico.

Pearson, contending that the fifth and fourteenth amendments barred the commonwealth's forfeiture of innocent parties' property without just compensation, sued the Puerto Rican authorities in the United States District Court for the District of Puerto Rico to recover its yacht or the appraised value thereof. The district court

---

5. This rule does not apply where removal of the *res* from the court's territorial jurisdiction is accidental, fraudulent, or improper. *The Rio Grande,* 90 U.S. (23 Wall) 458, 465, 23 L.Ed. 158 (1875); *see also United States v. One Lear Jet Aircraft,* 836 F.2d 1571, 1574 n. 2 (11th Cir.) (en banc), *cert. denied,* — U.S. —, 108 S.Ct. 2844, 101 L.Ed.2d 881 (1988).

6. Were we to find for Soria, her right, if any, to judicial redress from the Government for its treatment of the *Barracuda* pending her appeal would have to be determined in another forum, in subsequent litigation. We, of course, intimate no view as to any right of redress Soria would have in such circumstances.

granted relief, ordering the defendants to pay Pearson the appraised value of the yacht plus interest from the date of the forfeiture. *See id.* at 1344. The Supreme Court reversed. That Pearson had, by lease provision, prohibited the lessees from using the yacht for any unlawful purpose and had no knowledge of the subsequent wrongdoing was not enough; Pearson had failed to show that it "did all that it reasonably could to avoid having its property put to an unlawful use." *Calero–Toledo,* 416 U.S. at 690, 94 S.Ct. at 2095.

In the case at hand, Soria's testimony that she had no reason to suspect that her vessel was being used to smuggle drugs, even if believed, is not enough to satisfy *Calero–Toledo*'s demanding test of innocence. Soria was obliged to explain the presence of the secret compartments in her vessel's hull. She failed to do that and, hence, must suffer the forfeiture of her vessel.

AFFIRMED.