**UNITED STATES of America, Plaintiff,**

v.

**ONE (1) 1981 65′ SKOKUM MOTOR SAILOR KETCH NAMED "SILURIAN", Defendant.**

**No. 86–995–CIV.**

United States District Court,
S.D. Florida.

Aug. 7, 1989.

Robert K. Senior, Sp. Asst. U.S. Atty., Miami, Fla., for plaintiff.

Marc L. Barbakoff, Miami, Fla., for defendant.

## MEMORANDUM OPINION

SPELLMAN, District Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS CAUSE comes before the Court upon Order of Remand, issued by the Eleventh Circuit Court of Appeals in the above-styled cause. Upon review and reconsideration of this matter, this Court finds the defendant vessel, ONE (1) 1981 65′ SKOKUM MOTOR SAILOR KETCH NAMED "SILURIAN", is subject to forfeiture pursuant to 21 U.S.C.A. Section 881.

### Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C.A. Section 1345 and 1355.

### Procedural History

Plaintiff, United States of America, instituted forfeiture proceedings against the defendant vessel, ONE (1) 1981 65′ SKOKUM MOTOR SAILOR KETCH NAMED "SILURIAN", for alleged violations of 19 U.S.C.A. Section 1595a, 49 U.S.C.A.App. Section 781, 21 U.S.C.A. Section 881 and 19 U.S.C.A. Section 1703. This cause originally came before this Court upon a non-jury trial held on September 18, 1986. Upon conclusion of trial, this Court concluded that Claimant, Princessa, Inc., represented by its sole shareholder, James Maxwell ("Maxwell"), was an innocent owner pursuant to the standards set forth in Calero–Toledo v. Pearson Yacht Leasing Company, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).[1] Notwithstanding the establishment of this defense, this Court held that the vessel Silurian must be forfeited, pursuant to 19 U.S.C.A. Section 1703, and in accordance with this Court's prior holding in U.S. v. One Homemade Vessel Named Barracuda, 625 F.Supp. 893 (S.D. Fla.1986).[2]

In response to the decision of the district court, Claimant, Princessa, Inc., by and through James Maxwell, appealed this matter to the Eleventh Circuit on the ground that Maxwell's status as an innocent owner precluded forfeiture under this section. Upon review of this appeal, the Eleventh Circuit concluded that the district court failed to make adequate Findings of Fact regarding Maxwell's status as an innocent owner. Specifically, the district court failed to investigate the suspicious circumstances surrounding the provenance of the vessel Silurian.[3]

As the Findings of Fact rendered by the district court were inadequate, the appellate court was precluded from addressing the issue on appeal—whether 19 U.S.C.A. Section 1703 provides an implicit exemption from forfeiture for innocent owners. Accordingly, the Eleventh Circuit remanded the case to the district court to reconvene an evidentiary hearing, to elicit further proof, to make additional Findings of Fact, and to reconsider its Conclusions of Law.

In compliance with the Eleventh Circuit's Order of Remand, this Court held an evidentiary hearing on May 3, 1989; however, neither party adduced any additional or

---

1. In the Findings of Fact and Conclusions of Law previously entered by this Court, the Court determined that Claimant was an innocent owner as (a) he was not involved in the wrongful activity, (b) he was not aware of the wrongful activity, and (c) he had done all that reasonably could be expected to prevent the proscribed use of the property.

2. The Court declared the "Silurian" forfeit to the United States, holding that the contraband provisions of 19 U.S.C.A. Section 1703 provided no exemption from forfeiture for innocent owners.

3. Specifically, the Eleventh Circuit directed this Court to make further Findings of Fact regarding the suspicious circumstances regarding the Claimant's purchase of the defendant property, and to reconsider Claimant's innocent owner defense in light of these facts.

new evidence in this matter. Having heard the evidence presented at trial, and upon review of the trial transcript, this Court hereby enters the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52.

### Findings of Fact

1. On or about October 25, 1985, the United States Coast Guard stopped and boarded the vessel Silurian on the high seas.

2. Upon search of the vessel Silurian, the U.S. Coast Guard located a hidden compartment, to wit: A section of compartment within one of the fuel tanks, said compartment containing 676 pounds of marijuana.

3. The United States Customs Service seized defendant vessel on October 27, 1985, with approximately 676 pounds of marijuana on board.

4. Plaintiff, United States of America, has demonstrated probable cause to seize defendant vessel and to initiate forfeiture proceedings.[4]

5. Per stipulation of the parties, this Court finds that Princessa, Inc., is the sole Claimant to the vessel Silurian.

6. James Maxwell is the sole shareholder of Princessa, Inc.

7. This Court finds that Princessa, Inc., and James Maxwell as sole shareholder thereof, have standing to contest the instant forfeiture. This finding is based on the following:

(a) Princessa, Inc., is a Delaware corporation, incorporated on or about April 19, 1984, and pursuant to the Certificate of Good Standing issued by the State of Delaware, it remains a valid corporation to this date.

(b) That the sole stockholder and officer of the corporation is James Maxwell.

(c) That in July 1984, the corporation entered into a Memorandum of Sale to purchase the vessel Silurian from its prior owner, Jack Ralston.

(d) Claimant Princessa, Inc., owned, cared for, maintained and stored the Silurian from the time of purchase until its seizure, excluding the period of time the vessel was chartered to others.

8. Maxwell attended Florida Atlantic University and worked as a bartender for ten years while attending college.

9. Maxwell graduated from Florida Atlantic University in 1983.

10. Maxwell received student loans from 1981–1983.

11. Maxwell's income tax returns reflect an earned income of $5,000.00 in 1981, $6,200.00 in 1982, and $6,900.00 in 1983.

12. Maxwell testified that in 1983, he earned $1,800.00 in interest from a savings account, with a balance of $20,000.00. Maxwell testified that he had accumulated this money from his work as a bartender. Claimant, however, failed to adduce any documents evidencing the existence of this savings account.

13. In 1984, Maxwell purchased a 46-foot sailing vessel, the Princessa, for $46,-000.00. Claimant did not expend any of his own funds in the purchase of this vessel.

14. Maxwell testified that he purchased the vessel Princessa with a loan he received from Spec Four Marketing Associates, Inc. ("Spec Four").

15. Spec Four did not require Maxwell to post any security, or execute a promissory note to secure this loan. Claimant failed to adduce any documentation evidencing the existence of this loan.

16. Maxwell testified that he received this loan from Spec Four as payment for past work performed for the corporation.[5]

---

**4.** This Court is satisfied that the Government has established probable cause to seize defendant vessel and to institute these proceedings. At the time of seizure, the vessel Silurian was laden with more than 600 pounds of marijuana. Thus, the vessel facilitated the possession and concealment of a controlled substance in violation of 19 U.S.C.A. Section 1595a, 21 U.S.C.A. Section 881 and 49 U.S.C.A.App. Section 781.

**5.** Maxwell testified as follows:
  the President of Spec Four Marketing is Mike Sullivan. He has been a neighbor of mine for five (5) years. He started this corporation in 1981. It was a part-time business with another partner. I started doing the books for him in 1981. The agreement was I would not be paid and when the corporation did start to make money, they would see that I was taken

17. The president of Spec Four, Mike Sullivan, did not testify at trial, nor was his affidavit produced outlining the terms of the alleged loan.

18. In 1984, Maxwell purchased the vessel Silurian from Jack Ralston for $160,000.00.

19. Jack Ralston was a relative stranger, however, after a few meetings with Maxwell, Ralston agreed to sell the Silurian.

20. Maxwell did not expend any of his own funds to purchase the Silurian.

21. Pursuant to the terms of the loan agreement, Maxwell was not required to secure the loan with a deposit or collateral. In addition, the loan was interest-free.

22. The Memorandum of Sale for the vessel Silurian provided as follows: Claimant shall tender the purchase price in a balloon payment at the end of three years, with the prior owner, Jack Ralston, retaining the right of first refusal prior to any sale of the vessel, and the right to reclaim the vessel prior to Claimant tendering the purchase price.

23. Maxwell testified that Mr. Ralston was experiencing financial difficulties, and was contemplating filing for bankruptcy. In addition, Maxwell testified that Ralston had previously been engaged in litigation, and that further litigation was anticipated. Maxwell testified that, based upon Ralston's financial difficulties and the threat of potential litigation, Ralston sold the Silurian in an attempt to divest himself of all assets pending litigation.

24. By mid–1984, Maxwell owned two sailing vessels, the Princessa and the Silurian, worth approximately $250,000.00.

25. Maxwell's obligation to pay Ralston $160,000.00 for the Silurian matured in the summer of 1987. Claimant failed to adduce any evidence demonstrating that this balloon payment was ever made.[6]

26. After purchasing the Silurian, Maxwell sold the vessel Princessa to Carlos Sabino for $40,000.00 in cash.

27. In 1985, Maxwell chartered the Silurian to John Kresnick, who paid Maxwell $9,000.00 for use of the vessel for three months.

28. In 1985, Maxwell leased the vessel Silurian to Mr. Gary Lotz for a three month period for $9,000.00. (July, August, and September of 1985).

29. Maxwell leased defendant vessel to Lotz based upon his representation that he was taking friends and family on a summer cruise to the Caribbean Islands.[7]

30. Maxwell and Lotz executed a Charter Agreement reflecting the lease arrangement for the vessel Silurian.

31. Prior to leasing defendant vessel, Maxwell filled both fuel tanks of the Silurian to capacity.

32. According to Maxwell's testimony, he maintained periodic contact with Lotz regarding the location and condition of the vessel Silurian, throughout the Charter period.

33. Lotz kept the Charter Agreement and all relevant vessel papers on board the Silurian throughout the Charter period and at the time of seizure.

34. Lotz returned to Florida on Labor Day weekend with his children as they had to return to school.

35. The vessel Silurian remained in Montego Bay, Jamaica while Lotz returned to Florida with his children.

36. Upon his return to Florida, Lotz informed Maxwell that "he would need to charter the boat for an additional month because he would not have enough time to return it by the end of September."

37. Maxwell and Lotz entered into a Second Charter Agreement on Labor Day. However, the Second Charter Agreement

---

care of. I did the books for Spec Four Marketing for no pay for three years.

**6.** As of October, 1986, Maxwell had failed to notify Mr. Ralston that the vessel Silurian had been seized and was subject to forfeiture proceedings.

**7.** Maxwell testified that he had "no reason at all" to believe that Lotz would take his children and get involved in drug smuggling for the summer.

bears the same preparation date as the First Charter Agreement, June 15, 1985.

38. Maxwell was aware that Lotz' children would not be present on the vessel Silurian during the period of the second charter.

39. Maxwell testified that he had known Lotz since 1980, and that their acquaintance was social and business in nature.

40. Maxwell was aware that Lotz did not have a job; however, Maxwell believed that Lotz derived his income from a nightclub he owned in Illinois.[8]

41. Maxwell testified that "Mr. Lotz bragged about the wild parties" he had hosted. Maxwell also testified that he knew drugs were readily available in the nightclub business and that he would be foolish to assume that no drugs were used at any of Lotz's parties.

42. Prior to chartering the Silurian, Lotz had been aboard another marijuana-laden vessel seized off Jamaica in 1983, and came up positive for drug involvement on the Coast Guard check during the stop of the Silurian.

43. Maxwell testified that he was not aware that Lotz used drugs or had been arrested in 1983 for smuggling marijuana in a sea vessel.

44. Maxwell did not check with law enforcement authorities regarding Lotz's past drug involvement prior to the lease of the Silurian.

45. Pursuant to paragraph 15 of the Charter Agreement, Lotz had complete control and ownership of said vessel for the duration of the charter term. Lotz used the Silurian in an attempt to smuggle 676 pounds of marijuana which resulted in the seizure of the vessel on October 25, 1985.

46. Maxwell was not on board the vessel Silurian at the time of its seizure and forfeiture.

47. Nothing in the record before this Court indicates that Maxwell has ever been involved in drug smuggling operations.

48. There is nothing in the record before this Court to indicate that Maxwell knew of any prior smuggling operations engaged in by Lotz.

49. Claimant failed to adduce any evidence as to whether the secret compartments on board the Silurian were incorporated into the vessel prior or subsequent to its lease.

### Discussion

■ Once the government establishes probable cause, the burden of proof shifts to the Claimant to prove a defense to the forfeiture. Claimant must prove a defense by a preponderance of the evidence. 19 U.S.C.A. Section 1615; *United States v. One 1975 Ford F100 Pick-Up Truck*, 558 F.2d 755, 756 (5th Cir.1977); *United States v. One 1971 Chevrolet Corvette Automobile*, 496 F.2d 210 (5th Cir.1974). Innocence [of the Claimant], in and of itself, is an insufficient defense to forfeiture. To prevail on the defense of innocence, a Claimant must establish that (1) he was not involved in the wrongful activity, (2) he was not aware of the wrongful activity, and (3) he had done all that reasonably could be expected to prevent the proscribed use of the property. *Calero–Toledo v. Pearson Yacht Leasing*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).[9] As is evident, a Claimant who seeks to employ the innocent owner defense must satisfy a heavy burden of proof to sustain this defense.

---

**8.** Maxwell testified that "as far as I know, Mr. Lotz had owned a nightclub in Illinois" and that "every month he received a check."

**9.** As stated by the Supreme Court in *Calero–Toledo:*

It therefore has been implied that it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his

privity or consent.... Similarly, the same might be said of an owner who proved not only that he was uninvolved and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property. For in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive. Id. 416 U.S. at 663, 94 S.Ct. at 2080.

■ Upon review of the record herein, this Court finds that Claimant, Princessa, Inc., has failed to sustain its heavy burden of proving innocent ownership as required by *Calero–Toledo*. This Court is satisfied that neither Princessa, Inc., nor James Maxwell were (1) involved in the wrongful activity, or (2) aware of the wrongful activity. It is the opinion of this Court, however, that Claimant failed to exercise due care in leasing the defendant vessel to Mr. Lotz, and as a result thereof, Claimant failed to take all reasonable steps to insure that the vessel was not used to convey narcotics. Circumstances surrounding the leasing of the vessel to Mr. Lotz indicate that Claimant should have exercised greater care in transferring possession of the vessel. Accordingly, Claimant has failed to satisfy the third prong of the *Calero–Toledo* tripartite test for "innocent ownership." Thus, the vessel Silurian shall remain forfeit to the United States of America.[10]

It is further the opinion of this Court that Claimant has failed to establish the defense of innocent ownership based upon its failure to adequately explain the presence of the hidden compartments found inside defendant vessel. In *U.S. v. One (1) Homemade Vessel Named Barracuda*, 858 F.2d 643 (11th Cir.1988), the Eleventh Circuit, in reversing the district court's determination that Claimant was an innocent owner, held that Claimant was not an innocent owner based upon her failure to adequately explain the presence of the hidden compartments found inside the defendant vessel.[11] Although this Court previously found Claimant, Princessa, Inc., to be an innocent owner, the Findings of Fact and Conclusions of Law originally entered in

this case state that "there still remains an uncertainty as to when this compartment was incorporated into the Silurian." Based upon Claimant's failure to adduce sufficient evidence regarding the existence and construction of the hidden compartments found within defendant vessel, this Court finds, as did the Eleventh Circuit in *Barracuda*, that Claimant, Princessa, Inc., has failed to establish the defense of innocent ownership.

■ It is further the opinion of this Court that Claimant has failed to establish the defense of innocent ownership based upon the suspicious circumstances surrounding the provenance of the vessel Silurian. Circumstances surrounding a Claimant's purchase of the defendant res are relevant in determining whether an owner has established the defense of innocent ownership. *United States v. One 1977 36 Foot Cigarette Ocean Racer*, 624 F.Supp. 290, 296 (S.D.Fla.1985).[12] Claimant must provide satisfactory evidence regarding the provenance of the defendant res in order to sustain the heavy burden of proving innocent ownership.

This Court finds the provenance of the vessel Silurian, as well as Maxwell's financial status, highly suspect. Although this Court afforded Claimant every opportunity to adduce further evidence regarding the vessel's provenance, Claimant failed to avail itself of this opportunity. As stated by the Eleventh Circuit in its Order of Remand, "... we would be blind not to realize that the suspicious circumstances surrounding Maxwell's purchase of the Princessa and the Silurian 'might' affect Maxwell's innocent owner status...."

10. As stated by the United States Supreme Court in *Calero–Toledo v. Pearson Yacht Leasing*, 416 U.S. 663, 687–688, 94 S.Ct. 2080, 2094, 40 L.Ed.2d 452 (1974), "[t]o the extent that ... forfeiture provisions are applied to lessors, bailors, or secured creditors who are innocent of any wrongdoing, confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property".

11. The Eleventh Circuit in *Barracuda* relied on *Calero–Toledo* in determining that Claimant, Mrs. Soria, had failed to satisfy the demanding test of innocence.

In the case at hand, Soria's testimony that she had no reason to suspect that her vessel was being used to smuggle drugs, even if believed, is not enough to satisfy *Calero–Toledo's* demanding test of innocence. Soria was obliged to explain the presence of the secret compartments in her vessel's hull. She failed to do that and, hence, must suffer the forfeiture of her vessel.

12. The district court, in the aforecited case, determined that Claimant failed to adduce sufficient evidence to sustain an innocent owner defense based upon the circumstances surrounding (a) *the purchase,* (b) the alleged theft, and (c) the modifications to the boat.

Upon reconsideration of this matter, this Court finds that these suspicious circumstances preclude Claimant from establishing the defense of innocent ownership defense.[13]

Based upon the Findings of Fact and Conclusions of Law as set forth *supra,* this Court hereby concludes that Claimant, Princessa, Inc., has failed to establish the defense of innocent ownership as required by the standards enunciated in *Calero-Toledo.* Accordingly, the vessel Silurian shall stand forfeited pursuant to 21 U.S.C.A. Section 881.

Upon careful review of the record, it is hereby

ORDERED AND ADJUDGED that Claimant, Princessa, Inc., through its sole shareholder James Maxwell, has failed to establish the defense of innocent ownership and hence, the vessel Silurian shall stand forfeited pursuant to 21 U.S.C.A. Section 881.

DONE AND ORDERED.

---

**13.** The facts surrounding Maxwell's purchase of the two vessels is simply incredulous. First, Maxwell's poverty level income cannot be reconciled with his ownership of two luxury yachts. Second, the suspicious circumstances regarding the purchase of the vessel Silurian, i.e., the unsecured, interest-free loan from Mr. Ralston, creates suspicion which must be dispelled through the introduction of hard evidence, and not merely through the testimony of the Claimant alone.