**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**FOUR PARCELS OF REAL PROPERTY IN GREENE AND TUSCALOOSA COUNTIES IN THE STATE OF ALABAMA, etc., J.C. Pate, Jr., Rita Pate, et al., Defendants.**

**Donald K. Daniel, Claimant–Appellee.**

No. 89–7061.

United States Court of Appeals,
Eleventh Circuit.

Aug. 29, 1991.

Frank W. Donaldson, U.S. Atty., James D. Ingram, Birmingham, Ala., for plaintiff-appellant.

John W. Kelly, Sikes & Kelly, Selma, Ala., for claimant-appellee.

Before TJOFLAT, Chief Judge, FAY, KRAVITCH, JOHNSON, HATCHETT, ANDERSON, CLARK, EDMONDSON, COX, BIRCH and DUBINA, Circuit Judges, and MORGAN *, Senior Circuit Judge.

TJOFLAT, Chief Judge:

In this civil forfeiture case, the district court granted summary judgment to claimant Donald K. Daniel. A divided panel of this court affirmed. *United States v. Four Parcels of Real Property in Greene & Tuscaloosa Counties*, 893 F.2d 1245 (11th Cir.1990). We voted to rehear the case en banc and vacated the panel's decision. *United States v. Four Parcels of Real Property in Greene & Tuscaloosa Counties*, 902 F.2d 24 (11th Cir.1990). On rehearing, we hold that a genuine issue of material fact remains for trial. Accordingly, we vacate the summary judgment and remand the case for further proceedings.

---

* Senior U.S. Circuit Judge Morgan elected to participate in this decision pursuant to 28 U.S.C. § 46(c).

## I.

The civil forfeiture provision at issue here, 21 U.S.C. § 881(a)(6) (1988), provides that property acquired with the proceeds of an illegal drug transaction is forfeit to the United States.[1] On April 4, 1988, the Government filed a verified complaint[2] describing several properties it claimed were subject to civil forfeiture under section 881(a)(6), including the International Hough Model TD12 Dozer at issue in this appeal. The complaint alleged that, in August 1983, J.C. Pate, Jr., an active drug importer,[3] had purchased the dozer, plus equipment and attachments for it, with $65,000 in cash and an unspecified "trade in." In May 1984, according to the complaint, Pate purchased another attachment for the dozer, an International Hough Ripper Model 12RS, for $12,025.70 in cash. Both transactions, "were carried out in the name of Bobby Daniels [sic]," the claimant's brother. The complaint also alleged that Pate's tax return would not support the amount of cash he spent for all the property described in the complaint, including the dozer.[4] In its

---

1. Section 881(a)(6) states:

 > The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 >
 > ....
 >
 > (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, *all proceeds traceable to such an exchange,* and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

 21 U.S.C. § 881(a)(6) (emphasis added).

2. The Supplemental Rules for Certain Admiralty and Maritime Claims (the Supplemental Rules) govern judicial forfeitures under 21 U.S.C. § 881 (1988). *United States v. $38,000.00 in United States Currency,* 816 F.2d 1538, 1545 & n. 13 (11th Cir.1987). Supplemental Rule C(2) provides:

 > In actions in rem the complaint shall be verified on oath or solemn affirmation. It shall describe with reasonable particularity the property that is the subject of the action and state that it is within the district or will be during the pendency of the action. In actions for the enforcement of forfeitures for violation of any statute of the United States the complaint shall state the place of seizure and whether it was on land or on navigable waters, and shall contain such allegations as may be required by the statute pursuant to which the action is brought.

 Fed.R.Civ.P.Supp. C(2); *see also United States v. Four Parcels of Real Property on Lake Forrest Circle,* 870 F.2d 586, 588–89 n. 3 (11th Cir.1989) (describing requirements for complaint in forfeiture action); *United States v. Certain Real Estate Property Located at 4880 S.E. Dixie Highway,* 838 F.2d 1558, 1564 (11th Cir.1988) (requiring verified complaint); *$38,000,* 816 F.2d at 1545 (same); *United States v. A Single Family Residence & Real Property Located at 900 Rio Vista Blvd.,* 803 F.2d 625, 632 (11th Cir.1986) (same).

 Supplemental Rule E(2) provides an additional particularity requirement for civil forfeiture complaints. *See $38,000,* 816 F.2d at 1548; *Four Parcels on Lake Forrest Circle,* 870 F.2d at 588–89 n. 3. In addition to fulfilling Rule C(2)'s requirements, the government's complaint for civil forfeiture must "state the circumstances from which the claim arises with such particularity that the ... claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed.R.Civ.P.Supp. E(2)(a).

3. Pate later pled guilty in federal court to a charge of managing a continuing criminal enterprise involving drugs.

4. The portion of the complaint relevant to the dozer stated:

 > 1. This action is a civil action for forfeiture pursuant to [21 U.S.C. § 881(a)(6)]. Jurisdiction is predicated upon [28 U.S.C. § 1345 (1988)].
 >
 > ....
 >
 > 7. On or about August 9, 1983, One (1) International Hough Model TD12 Dozer [with certain equipment] was purchased with $65,000.00 in cash plus a trade in by J.C. Pate, Jr. On or about May 16, 1984, a new International Hough Ripper Model 12RS was purchased for this dozer by J.C. Pate, Jr. for $12,025.70 in currency. The transactions were carried out in the name of Bobby Daniels [sic].
 >
 > 8. Confidential informants have informed federal agents that J.C. Pate, Jr., [and an associate] have been active in the importation of marijuana, cocaine, and other controlled substances since at least 1980. In October 1984, an unclaimed aircraft was seized by agents of the Drug Enforcement Administration on [a parcel of real property described in paragraph 1 of the complaint]; the aircraft contained marijuana residue and J.C. Pate, Jr.'s, fingerprints. Neither Pate nor [his associate] show

complaint and in a separate motion filed on the same day, the Government asked for a warrant for the arrest of the property.[5]

In support of its motion for a warrant, the Government filed the declaration of Ronald R. Brunson, a special agent of the Internal Revenue Service who had verified the complaint.[6] Brunson, who had been investigating Pate's involvement with importing illegal drugs for two years, described the extent of Pate's drug importing operation—Pate had engaged in at least fifty drug transactions during the three-year period from August 1981 to October 1984, or an average of one every three weeks. Brunson also stated that Pate had no visible means of earning large sums of cash, and that Pate's pattern of using grocery bags full of cash to buy property and placing it in others' names was typical of a large-scale narcotics conspiracy. Brunson described Pate's purchase of the dozer in terms similar to those of the complaint.[7]

On April 5, 1988, the district court, finding that "probable cause exist[ed] to believe" that the property described in the complaint, including the dozer, was subject to forfeiture under section 881(a)(6), issued a warrant for its arrest and directed the United States Marshal to take custody of it.[8] Daniel filed a verified claim to the dozer and an answer to the complaint.[9] In

---

income on their Federal tax returns which would support the large amount of currency expended as set forth in [the preceding paragraphs of the complaint].

9. The names and addresses of possible claimants known to plaintiff are:

. . . .

Bobby Daniels [sic] (dozer-tractor)
[address]
Donald K. Daniels [sic] (dozer-tractor)
[address]

. . . .

10. The value of [all the property described in the complaint] exceeds $100,000.

11. The defendant property is located in Greene and Tuscaloosa Counties in Alabama in the Northern District of Alabama, within the jurisdiction of this court.

WHEREFORE, the plaintiff prays that the usual process for forfeiture issue against the defendant property and against any and all proceeds from the sale thereof; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; and that the plaintiff have such other and further relief as the case may require.

Paragraph 7, describing the dozer, differs from every other paragraph of the complaint describing property to be forfeited: it neither expressly refers to section 881(a)(6), nor states that the dozer was purchased with the proceeds of illegal drug trafficking and was, therefore, forfeit.

5. The Attorney General may seize property subject to civil forfeiture under section 881 upon process issued in accordance with the Supplemental Rules, *see supra* note 2, by a district court with jurisdiction over the property. 21 U.S.C. § 881(b). Alternatively, the Attorney General may request a warrant for seizure of the property in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure. *Id.* The Attorney General also may seize property without process in four situations, including when he "has probable cause to believe that the property is subject to civil forfeiture." *Id.* § 881(b)(1)-(4).

In this case, the Government seized the property upon process issued in accordance with Supplemental Rule C(3), which provides that "in actions by the United States for forfeitures for federal statutory violations," the clerk, "upon filing of the complaint, shall forthwith issue a summons and warrant for the arrest of the ... property." Fed.R.Civ.P.Supp. C(3). The United States Marshal then executes the warrant and seizes the property. *See Four Parcels on Lake Forrest Circle,* 870 F.2d at 589 n. 7; *$38,000,* 816 F.2d at 1545; *Single Family Residence,* 803 F.2d at 632. Neither Supplemental Rule C(3) nor due process considerations requires preseizure judicial approval in actions by the United States for forfeitures for federal statutory violations. *See 4880 S.E. Dixie Highway,* 838 F.2d at 1560 n. 3, 1561–62 & nn. 7–8; *Single Family Residence,* 803 F.2d at 632.

6. The court granted the Government's motion to seal Brunson's declaration to protect the criminal investigation proceeding against Pate and his associates.

7. Brunson's declaration states:
In August 1983, J.C. Pate, Jr., bargained for and purchased a dozer-tractor for $98,000.00 from Tractor and Equipment Co., Inc., in Tuscaloosa, Alabama. Pate traded in an older dozer-tractor and paid $65,000.00 balance due in currency. The dozer-tractor was placed in the name of Bobby Daniel, a nominee. In May 1984, a $12,025.70 attachment to the dozer-tractor was purchased in the same manner.

8. As we have stated, the court's preseizure determination of probable cause was not required by the Supplemental Rules or mandated by due process considerations. *See supra* note 5.

9. Supplemental Rule C(6) provides:

his answer, Daniel asserted that he owned the dozer and its equipment and attachments, and denied that the dozer "was purchased by or for" Pate or that Pate had any interest in the dozer.

Daniel then moved for judgment on the pleadings, *see* Fed.R.Civ.P. 12(c),[10] asserting that the Government's complaint was insufficient because it did not specifically allege that the dozer was the proceeds of an illegal drug transaction and thus forfeit under section 881(a)(6) or that the dozer was forfeit under any other provision of section 881(a). The district court elected to treat this motion as a summary judgment motion, and so notified the Government and Daniel.[11]

In support of his motion for summary judgment, Daniel filed two affidavits, his own and that of his sister-in-law and bookkeeper, Dorothy Daniel. Daniel's position is that although Pate, a convicted drug dealer, purchased the dozer with cash, he did so as Daniel's agent, with money earned by Daniel's legitimate logging business. In his own affidavit, Daniel stated that he had been in the logging business for over ten years. In mid–1983, Daniel asserted, he bought a used dozer from Pate for $16,000 cash in order to clear tracks for his logging trucks. Pate operated this dozer for Daniel without pay. When it broke, Pate hauled it to Tuscaloosa for repair. When it became apparent that the cost of repair would be greater than the value of the dozer, Daniel told Pate to negotiate a trade-in for a new dozer. After Pate informed Daniel that a new dozer would cost $65,000 in excess of the value of the trade-

in, Daniel left this sum, in cash, with Dorothy Daniel. Pate picked up the cash and bought the dozer. By mistake, the bill of sale for the dozer was placed in the name of Bobby Daniel, Daniel's brother. When Dorothy Daniel received this bill of sale, she called the mistake to Daniel's attention and prepared a paper correcting the error for Bobby Daniel to sign.

Dorothy Daniel's affidavit corroborated Daniel's account of the transaction. Dorothy stated that, as bookkeeper of Daniel's logging business, she maintained the records and received all the proceeds. According to Dorothy, most of the transactions of the business, including purchases of heavy equipment, were handled in cash. On August 9, 1983, Daniel gave her $65,000 in cash and told her to give it to Pate. Although Daniel did not tell her the purpose of the cash, she assumed that it was to be used to purchase equipment. On August 18, a bill of sale arrived for a new dozer, listing Bobby Daniel—Dorothy's husband—as owner. After Daniel told her that the dozer was his, purchased for him by Pate, she corrected the error by having Bobby Daniel sign a statement that he had no claim to the dozer and replaced his name on the bill of sale with Daniel's. She added that Daniel's business had taken deductions for depreciation of the dozer on its federal and state income tax forms.

In response to Daniel's affidavits, the Government filed the affidavit of Donald W. McArthur, an agent with the Federal Bureau of Investigation.[12] The Government's position, as stated in its verified

---

10. The Federal Rules of Civil Procedure govern judicial forfeiture actions to the extent that they are consistent with the Supplemental Rules. Fed.R.Civ.P.Supp. A; *$38,000*, 816 F.2d at 1547 n. 20.

The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action.

11. Fed.R.Civ.P. 12(c) provides, in pertinent part:

If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [Fed.R.Civ.P.] 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by [Fed.R.Civ.P.] 56.

12. Moreover, the Government moved the court to unseal Brunson's declaration, *see supra* note 6, because the criminal investigation had been completed; the court granted this motion.

complaint, Brunson's declaration, and Mc-Arthur's affidavit, is that Pate, a convicted drug dealer with no visible means of earning large sums of cash, bought the dozer with cash earned through drug dealing, placed it in Bobby Daniel's name to conceal his ownership interest, and, after purchase, used it for his own purposes. In his affidavit, McArthur stated that he had investigated Pate for illegal drug trafficking, and that Pate had entered a guilty plea to a charge of managing a continuing criminal enterprise from 1981 to 1985. McArthur asserted that during this investigation, he discovered that Pate, like many drug traffickers, often concealed his assets by using cash to buy valuables (including several tractors and loaders besides the dozer at issue here) and putting them in others' names. McArthur, moreover, had seen photographs showing Pate riding the dozer at Pate's farm and photographs of the dozer parked at Pate's residence. McArthur also had interviewed Michael Lancaster, whom he described as a long-time associate of Pate's. Lancaster, according to McArthur, stated that Pate had used the dozer on Lancaster's property in exchange for repair work Lancaster did on Pate's truck, that Lancaster had helped Pate buy a trailer on which he transported the dozer, and that Lancaster understood that the dozer belonged to Pate. The dozer was seized at Lancaster's place of business.

McArthur also recounted interviews with (1) Pate, who admitted storing the dozer at his brother's residence, but stated that it belonged to *Bobby* Daniel; (2) Bobby Daniel, who stated that the rightful owner of the dozer was Donald Daniel and that Bobby had signed a disclaimer indicating that he did not own the dozer; and (3) Dorothy Daniel, who claimed that Daniel gave her a "sack of money" to give to Pate to purchase the dozer; she also asserted that Bobby had disclaimed ownership. Finally, McArthur stated that Pate was a life-long friend of both Donald and Bobby Daniel,

and had on numerous occasions used property belonging to the Daniels' as an airstrip to import drugs.

Daniel countered the Government's version of the transaction with a second affidavit. In this affidavit, Daniel stated that because Pate operated the dozer in Daniel's logging business without compensation, transported the dozer to work sites, and was responsible for its operation, Daniel allowed Pate to use the dozer for his own purposes. It was, therefore, "quite possible" that there were photographs of the dozer at Pate's residence and being ridden by Pate, and that Pate had used the dozer at Lancaster's residence in exchange for repair work done by Lancaster.

The district court granted summary judgment to Daniel. It held, first, that the factual and legal allegations of the government's complaint were inadequate to justify forfeiture.[13] The court did not, however, as might be expected, dismiss the Government's complaint with leave to amend. *See United States v. $38,000.00 in United States Currency*, 816 F.2d 1538, 1545, 1549 (11th Cir.1987); *United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 638 (1st Cir.1988). Instead, it granted summary judgment to Daniel. First, it appears to have treated its holding that the Government's complaint was inadequate as a determination that the Government had not shown probable cause for forfeiture of the dozer, as required by section 881(a)(6). Although it could have granted summary judgment to Daniel on this basis alone, *see infra* p. 1439, it then proceeded to determine that there was no genuine issue of material fact—i.e., that Daniel had shown, and that the Government provided "no substantial evidence" to rebut, that the dozer was not acquired with the proceeds of an illegal drug transaction.

The court, accordingly, ordered the United States Marshal to release the dozer to Daniel. The Government, fearing that this release would deprive the court of jurisdic-

---

13. The basis for the court's conclusion that the complaint was inadequate was the Government's failure to allege in its complaint that the dozer was the proceeds of an illegal drug transaction and therefore forfeit under section 881(a)(6). In an abundance of caution, the district court also considered whether the complaint had alleged that the dozer might be forfeit under sections 881(a)(1)–(5) and (7)–(8). Not surprisingly, the court found that it did not.

tion over the dozer, twice moved the court to stay the release of the dozer pending consideration of the Government's motion for reconsideration. In response, Daniel filed an affidavit promising that he would keep the dozer within the territorial jurisdiction of the district court so long as any proceedings in the case were pending.[14] The district court denied both motions to stay release, and the Marshal released the dozer from the custody of the court.

## II.

The Government appeals. There are two issues on appeal: (1) whether we have in rem jurisdiction over the dozer, and (2) whether the district court erred in granting summary judgment to Daniel.

## A.

First, we determine whether we have in rem jurisdiction. A civil forfeiture action is not an action in personam against the claimant of the property; rather, it is an action in rem against the property itself. *$38,000*, 816 F.2d at 1543–54 n. 12; *cf. United States v. Four Parcels of Real Property on Lake Forrest Circle*, 870 F.2d 586, 589 n. 4 (11th Cir.1989). In rem jurisdiction derives entirely from the court's control over the defendant res. *Pennington v. Fourth Nat'l Bank*, 243 U.S. 269, 272, 37 S.Ct. 282, 283, 61 L.Ed. 713 (1917); *United States v. One Lear Jet Aircraft*, 836 F.2d 1571, 1573 (11th Cir.) (en banc), *cert. denied*, 487 U.S. 1204, 108 S.Ct. 2844, 101 L.Ed.2d 881 (1988). The court loses control over the res, and in rem jurisdiction ceases, when—because the losing party has failed to file a stay of judgment or a supersedeas bond—the prevailing party properly removes the res from the *territorial* jurisdiction of the court. *Id.* at 1573 (when

district court released res, an airplane, to government, which transferred res to warehouse in Missouri, appellate court had no in rem jurisdiction over claimant's appeal); *see also United States v. One (1) 1983 Homemade Vessel Named "Barracuda,"* 858 F.2d 643, 647 (11th Cir.1988); *L.B. Harvey Marine, Inc. v. M/V "River Arc,"* 712 F.2d 458, 459 (11th Cir.1983).[15]

Daniel argues, however, that when the district court released the dozer from custody, we lost in rem jurisdiction over the Government's appeal even though the dozer, pursuant to Daniel's promise, remains within the territorial jurisdiction of the court. A panel of this circuit and a panel of our predecessor circuit have reached different results on whether the release of the res from custody deprives us of in rem jurisdiction over an appeal concerning the res when the res remains within the territorial jurisdiction of the court. Our circuit, in *"Barracuda,"* 858 F.2d at 647, held that the release of the res from the custody of the district court, and the virtual destruction of the res, does not destroy our in rem jurisdiction, so long as the res remains within the district court's and, thus, our, territorial jurisdiction. In *"Barracuda,"* the district court ruled that the res, a homemade fishing boat, was forfeit to the Government. The claimant appealed but did not file a supersedeas bond to obtain a stay of release of the boat pending appeal. *See* Fed.R.Civ.P. 62(d). The district court, accordingly, released the boat to the government, which filled the vessel with concrete and sank it in a bay within the district court's territorial jurisdiction. On appeal, the government argued that because the claimant, if successful, would be unable to salvage anything from the sunken boat, the boat effectively had been removed from the court's territorial jurisdic-

---

**14.** Daniel's affidavit stated, in pertinent part: I will not destroy, give away or relinquish control of my dozer when it is returned to me. Further, I will see that my dozer is properly maintained and that it does not suffer devaluation other than in connection with its normal and intended use in my logging business. Since I conduct my logging business within the boundaries of the Northern District of Alabama I will not remove my dozer from the

Northern District so long as there are any pending proceedings in this case. Therefore, there will be no loss of jurisdiction.

**15.** If, however, the removal of the res from the court's territorial jurisdiction is accidental, improper, or fraudulent, the court retains in rem jurisdiction. *One Lear Jet*, 836 F.2d at 1574 n. 2; *cf. The Rio Grande*, 90 U.S. (23 Wall.) 458, 465, 23 L.Ed. 158 (1875).

tion. We stated, to the contrary, that "[a] court's power to exercise its *in rem* jurisdiction ... ceases, and *in rem* jurisdiction fails, when the *res* leaves the court's territorial jurisdiction"; jurisdiction "is not defeated solely because a physical change occurs in the *res*." *"Barracuda,"* 858 F.2d at 647 (citations omitted).

Our predecessor circuit, in contrast, held, in *The Manuel Arnus*, 141 F.2d 585 (5th Cir.), *cert. denied*, 323 U.S. 728, 65 S.Ct. 63, 89 L.Ed. 584 (1944),[16] that when the claimant to the res fails to seek a stay or file a supersedeas bond and the court releases the res from custody, but the res remains within the court's territorial jurisdiction, the court nonetheless loses in rem jurisdiction. The court stated: "[I]t is quite clear that libellant allowed *custody and, therefore, jurisdiction of the res to be surrendered* and that it may not claim that the in rem jurisdiction persisted after such surrender." *Id.* at 586 (emphasis added);[17] *See also, e.g., United States v. $79,000 in United States Currency*, 801 F.2d 738, 739 (5th Cir.1986) ("Where no supersedeas is filed or steps taken to supersede judgment *and the Marshal surrenders custody*, neither the district court nor the appellate court retains in rem jurisdiction." (emphasis added.))

■■■ We do not resolve the conflict between *"Barracuda"* and *Manuel Arnus*, because this case is distinguishable from those holdings. In both *"Barracuda"* and *Manuel Arnus*, the district court released the res from custody into the hands of a party who was free, if that party so desired, to remove the res from the district, to destroy it, or, as it happened, to keep it within the court's territorial jurisdiction; the res remained within the territorial jurisdiction of the court purely by chance. In this case, however, the res did not remain in the territorial jurisdiction of the court by happenstance. Instead, the court released the dozer on the condition that Daniel—pursuant to his affidavit, *see supra* pp. 1434–35 & note 14—would keep the dozer within the district and, therefore, available for seizure should the Government prevail on appeal. Before releasing the dozer, therefore, the court protected its in rem jurisdiction by making Daniel its bailee for the dozer; in effect, it retained custody of the res. We hold that when a party to an in rem action induces the district court to release the res into the custody of that party pending appeal by a promise to keep the property within the territorial jurisdiction of the court—and therefore available for seizure should the losing party prevail on appeal—we have in rem jurisdiction of that appeal. Accordingly, we have in rem jurisdiction in this case.[18]

**16.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**17.** Our en banc decision in *One Lear Jet*, 836 F.2d at 1571—which held that removal of the res from the territorial jurisdiction of the court destroys in rem jurisdiction, and which therefore implied that the court retains jurisdiction so long as the res remains within its territorial jurisdiction—may have implicitly overruled *Manuel Arnus*. Moreover, we believe that the *"Barracuda"* rule—that when a district court releases a res from custody pending appeal, we have in rem jurisdiction over the appeal so long as the res remains within our territorial jurisdiction— makes more sense. While the res remains in the territorial jurisdiction of the court, the court retains control over the res, because the court has the power to seize the res if the losing party prevails on appeal. Although a losing party that fails to obtain a stay or file a supersedeas bond

to prevent release of the res to the prevailing party pending appeal runs the risk that the prevailing party will remove the res from the court's territorial jurisdiction, *see One Lear Jet*, 836 F.2d at 1574 n. 2, the release of the property from custody itself does not place it beyond the court's control. *Cf.* 4 C. Wright & A. Miller, Federal Practice and Procedure § 1070, at 426–27 (2d ed.1987). Because we distinguish this case from *Manuel Arnus*, however, *see infra* slip opinion pp. 5301–5302, we do not overrule it.

**18.** Because we find jurisdiction over the dozer by traditional precepts of in rem jurisdiction, we do not decide whether Daniel, by filing a claim to the property, consented to the in personam jurisdiction of the court over him so that we may exercise in personam jurisdiction even if we have no in rem jurisdiction over the dozer. *See Treasure Salvors, Inc. v. The Unidentified Wrecked & Abandoned Sailing Vessel*, 569 F.2d 330, 333–35 (5th Cir.1978) (when government intervened to claim res that lay outside territorial jurisdiction of court and stipulated to court's

### B.

#### 1.

Next, we determine whether the district court erred by granting summary judgment to Daniel. Our resolution of this issue turns on the relationship of the burden of proof for summary judgment and the burdens of proof for civil forfeiture under section 881. Accordingly, we first outline the proper analysis for a district court to use in considering a motion for summary judgment in a section 881 forfeiture action.

Our review of a district court's grant of summary judgment is plenary. *Bannum, Inc. v. City of Fort Lauderdale,* 901 F.2d 989, 996 (11th Cir.1990). Under Fed. R.Civ.P. 56(c), a district court should award summary judgment to the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The substantive law applicable to the case identifies which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 251–52, 106 S.Ct. at 2510, 2511–12.

In determining whether to grant summary judgment, the district court must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. Accordingly, on summary judgment, "the evidence of the non-movant is to be believed." *Id.* at 255, 106 S.Ct. at 2513. The district court should "resolve all reasonable doubts about the facts in favor of the non-movant," *Browning v. Peyton,* 918 F.2d 1516, 1520 (11th Cir.1990), and draw "all justifiable inferences ... in his favor," *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact," summary judgment is not justified. *Bannum,* 901 F.2d at 996.

The moving party bears "the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). When the *nonmoving* party has the burden of proof at trial, the moving party is not required to "support its motion with affidavits or other similar material *negating* the opponent's claim," *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553, in order

admiralty jurisdiction, government consented to in personam jurisdiction of court over its claim); *United States v. An Article of Drug Consisting of 4,680 Pails,* 725 F.2d 976, 982–84 (5th Cir.1984) (when claimant to res contested government's forfeiture action, claimant consented to in personam jurisdiction of court; court could hear government's appeal even though claimant, by removing the res from the court's territorial jurisdiction, destroyed in rem jurisdiction).

We note, though, that our en banc decision in *One Lear Jet* may have foreclosed this argument. In *One Lear Jet,* we recognized that a "limited exception to the *in rem* rule allows a court to retain jurisdiction even though the *res* is no longer within the court's territorial boundaries," 836 F.2d at 1575–76: if "there is 'an interface of *in rem* and *in personam* jurisdiction,' a court may properly exercise broad *in personam* power over the parties to the *in rem* action," *id.* at 1576 (quoting *Inland Credit Corp. v. M/T Bow Egret,* 552 F.2d 1148, 1152 (5th Cir.1977)). We held, however, that the government, by bringing an in rem civil forfeiture action, did not submit itself to the in personam jurisdiction of the court, and that therefore we had no jurisdiction to hear the claimant's appeal after the res was removed from the district and in rem jurisdiction ceased. *See One Lear Jet,* 836 F.2d at 1576–77 & n. 9 (distinguishing *Treasure Salvors* and *Inland Credit* and refusing to follow *An Article of Drug* to the extent that it was indistinguishable from *One Lear Jet* ). *But see United States v. $95,-945.18, United States Currency,* 913 F.2d 1106, 1108–10 (4th Cir.1990) (adopting view of *One Lear Jet* dissenters); *United States v. Aiello,* 912 F.2d 4, 6–7 (2d Cir.1990) (same), *cert. denied,* —— U.S. ——, 111 S.Ct. 757, 112 L.Ed.2d 777 (1991).

to discharge this "initial responsibility." Instead, the moving party simply may " 'show[ ]'—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 324, 106 S.Ct. at 2554.[19] Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial. *Id.* at 331, 106 S.Ct. at 2557 (Brennan, J., dissenting).[20] If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial. Fed.R.Civ.P. 56(e); *Chanel, Inc. v. Italian Activewear, Inc.,* 931 F.2d 1472, 1477 (11th Cir.1991). If the nonmoving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552, the moving party is entitled to summary judgment.[21]

When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it "must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331, 106 S.Ct.

at 2557 (Brennan, J., dissenting); *see also Chanel, Inc.,* 931 F.2d at 1477. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party. *See id.* at 1477. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, "come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.; see also* Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 331, 106 S.Ct. at 2557 (Brennan, J., dissenting).

■ An understanding of the burdens of proof for civil forfeiture under section 881 is essential to the proper application of the summary judgment standard in this case. For property to be forfeit under section 881, the government first must show probable cause to forfeit the property.[22] When the government has established probable cause, the burden of proof shifts to the claimant, who must show, by a preponderance of the evidence, that the property is not forfeit—for instance, that, despite the government's showing of probable cause, the property was not acquired with the proceeds of an illegal drug transaction.

**19.** Justice Rehnquist's opinion in *Celotex* does not explain exactly how the moving party may show the court that the nonmoving party will be unable to prove its case. *See* Nelkin, *One Step Forward, Two Steps Back: Summary Judgment after* Celotex, 40 Hastings L.J. 53, 54, 63, 65–66 (1988). In this circuit, "[e]ven after *Celotex,* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991); *see also Celotex,* 477 U.S. at 328, 106 S.Ct. at 2555 (White, J., concurring) ("it is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case"); *see also id.* at 332, 106 S.Ct. at 2557 (Brennan, J., dissenting). Instead, the moving party must point to specific portions of the record in order to demonstrate that the nonmoving party cannot meet its burden of proof at trial. *Id.* at 325, 106 S.Ct. at 2553 ("a party seeking summary judgment always bears the initial responsibility ... of *identifying those portions* of the materials on file

which demonstrate the absence of a genuine issue of material fact" (emphasis added)).

**20.** Justice Brennan agreed with the *Celotex* plurality's analysis of the standard for summary judgment, but dissented because he disagreed with the plurality's application of the law to the facts of the case. *See Celotex,* 477 U.S. at 334, 106 S.Ct. at 2558; 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2727, at 28 (2d ed. supp.1991).

**21.** This analysis assumes that both parties have had sufficient time for discovery. *See* Fed. R.Civ.P. 56(f); *Anderson,* 477 U.S. at 250 n. 5, 106 S.Ct. at 2553.

**22.** Whether the government has shown probable cause for forfeiture is a question of law. *United States v. Four Million, Two Hundred Fifty–Five Thousand,* 762 F.2d 895, 903 n. 17 (11th Cir. 1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986) [*$4,255,000*]; *United States v. $364,960.00 in United States Currency,* 661 F.2d 319, 323 & n. 12 (5th Cir. Unit B Nov. 1981).

*See* 19 U.S.C. § 1615 (1988);[23] *see also United States v. Single Family Residence & Real Property Located at 900 Rio Vista Blvd.*, 803 F.2d 625, 629 (11th Cir.1986); *United States v. Four Million, Two Hundred Fifty–Five Thousand*, 762 F.2d 895, 904 (11th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986) [hereinafter *$4,255,000*]. If the claimant fails to meet this burden, the property is forfeit to the United States.

 Accordingly, when the *government* moves for summary judgment in a section 881 civil forfeiture action, the court first must determine whether, as a matter of law, the government has shown probable cause for forfeiture.[24] If not, summary judgment for the government is improper. *See United States v. Twenty (20) Cashier's Checks, Having the Aggregate Value of Two Hundred Thousand ($200,000) Dollars in U.S. Currency*, 897 F.2d 1567, 1570 (11th Cir.1990) (per curiam) (exhibit). If so, the court then determines whether the claimant can show, by a preponderance of the evidence, whether the property is forfeit. The court, in deciding this issue on summary judgment, first must determine whether the government has met its "initial responsibility" of demonstrating the absence of a genuine issue of material fact—that is, taking all the evidence in the light most favorable to the claimant, has the government shown that no reasonable jury could award the property to the claimant? The government, because it does not bear the burden of proof on this issue, may meet this burden by either pointing out to the court specific portions of the record that it believes demonstrate that the claimant cannot show by a preponderance of the evidence that he is entitled to the property, *see supra* note 19, or by introducing affirmative evidence negating the claimant's case. If it meets this burden, and the claimant, in response, fails to introduce significant, credible evidence sufficient to show that a reasonable jury could find, by a preponderance of the evidence, that the claimant is entitled to the property, the government is entitled to summary judgment; the nonmoving party has failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

 When, as here, the *claimant* moves for summary judgment, the court's initial inquiry is similar: the court must determine whether, as a matter of law, the government has shown probable cause.[25] If it has not, the court should grant summary judgment to the claimant. If the government has shown probable cause, the claimant still may be entitled to summary judgment, if he affirmatively shows the absence of a triable issue of fact on the issue on which he has the burden of proof—that is, taking all the evidence in the light most favorable to the government, no reasonable jury could award the property to the government. If the claim-

---

**23.** 21 U.S.C. § 881(d) makes 19 U.S.C. § 1615, which governs the burdens of proof for forfeiture under the customs laws, applicable to section 881 forfeiture actions. *See* 21 U.S.C. § 881(d); *$364,960*, 661 F.2d at 322–23 n. 10. 19 U.S.C. § 1615 provides, in pertinent part:

In all suits or actions ... where the property is claimed by any person, the burden of proof shall lie upon such claimant; ... *Provided*, That probable cause shall be first shown for the institution of such suit or action, to be judged by the court....

**24.** This analysis assumes that the court has not already determined, by deciding a claimant's motion to dismiss the complaint or for judgment on the pleadings, whether the government's complaint alleged probable cause. When, however, the issue of probable cause remains for determination on summary judg-

ment, the court may determine probable cause based on all the evidence adduced by the government; in essence, the court considers the government's complaint to be amended to conform to the evidence. *See United States v. $41,305.00 in Currency & Traveler's Checks*, 802 F.2d 1339, 1343 (11th Cir.1986) (evidence used to prove probable cause "may include facts learned after the actual seizure of the [property]"); *Single Family Residence*, 803 F.2d at 629 (determining probable cause from testimony at trial).

**25.** The claimant, as the moving party, bears the "initial responsibility of informing the ... court of the basis for its motion," *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553, by pointing out why it believes that the government does not have probable cause for forfeiture.

ant fails to make such an affirmative showing, the court should deny the claimant's motion. If the claimant does show, however, that no reasonable jury could find that the property was forfeit, the government, to defeat the claimant's motion, must respond with evidence showing that a factual issue exists as to whether the property is forfeit.

### 2.

■ In this case, the claimant, Daniel, moved for summary judgment. Our initial inquiry, then, is whether, as a matter of law, the Government demonstrated probable cause. This court has interpreted section 881(a)(6)'s probable cause requirement as "probable cause to believe that a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance." *Single Family Residence*, 803 F.2d at 628.[26] As this court has emphasized, the government need not "actually prove by a preponderance of evidence a substantial connection to drug dealing." *United States v. $41,305.00 in Currency & Traveler's Checks*, 802 F.2d 1339, 1343 (11th Cir.1986); *see also United States v. $364,960.00 in United States Currency*, 661 F.2d 319, 324 (5th Cir. Unit B Nov. 1981) (evidence of probable cause "need not provide conclusive proof").[27] Instead, the government need only show *"probable cause for belief"* that such a connection exists. *$4,255,000*, 762 F.2d at 903 (quoting *$364,960*, 661 F.2d at 323). This court, moreover, has defined probable cause as a " 'reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion'—the same standard used to determine the legality of arrests, searches, and seizures in criminal law." *United States v. Four Parcels of Real Property on Lake Forrest Circle*, 870 F.2d 586, 590 n. 10 (11th Cir. 1989) (quoting *$364,960*, 661 F.2d at 323); *see also Single Family Residence*, 803 F.2d at 628. Furthermore, as the court reiterated in *Single Family Residence*, "[t]he existence of probable cause is judged 'not with clinical detachment, but with a common sense view to the realities of normal life.' " 803 F.2d at 628 (quoting *$4,255,000*, 762 F.2d at 904).

■ The government may use both circumstantial evidence, *$41,305*, 802 F.2d at 1343; *$4,255,000*, 762 F.2d at 904, and hearsay, *Single Family Residence*, 803 F.2d at 629 n. 2, to establish probable cause. Moreover, the government need not show a relationship between the property and a particular drug transaction, *$4,255,000*, 762 F.2d at 904. Finally, "[t]hat the evidence presented would support an alternative hypothesis does not prevent it being probative on the issue of probable cause." *$364,960*, 661 F.2d at 324.

■ Applying this standard, we hold that based on all the evidence in the record,[28] the Government has demonstrat-

---

**26.** The "substantial connection" requirement appears in the legislative history of section 881(a)(6), which states that "it is the intent of these provisions that property would be forfeited only if there is a substantial connection between the property and the underlying criminal activity which the statute seeks to prevent." Joint Explanatory Statement of Titles II and III of the Psychotropic Substances Act of 1978, 124 Cong.Rec. 517, 647 (daily ed. Oct. 7, 1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 9518, 9522.

**27.** In *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

**28.** When the district court held that the Government's complaint was inadequate, it should have dismissed the complaint with leave to amend.

*Cf. $38,000*, 816 F.2d at 1545, 1549; *Pole No. 3172, Hopkinton*, 852 F.2d at 638. Instead, the district court granted summary judgment to Daniel, without affording the Government the opportunity to cure the defect by amending its complaint. Accordingly, on appeal, we consider the complaint amended to conform to all of the evidence submitted by the Government in opposition to Daniel's motion for summary judgment, and assess the Government's showing of probable cause on this basis. *Cf. $41,305*, 802 F.2d at 1343 (evidence used to prove probable cause "may include facts learned after the actual seizure of the [property]"); *Single Family Residence*, 803 F.2d at 629 (determining probable cause from testimony at trial).

Alternatively, we hold that the Government's complaint was clearly sufficient to justify forfeiture. (We do not consider whether Brunson's declaration, filed in support of the Government's motion for a warrant, was incorporated

ed, as a matter of law, that it had probable cause to believe that the dozer had a substantial connection to illegal drug transactions.[29] The Government showed that (1) Pate was a convicted drug dealer who had engaged in extensive narcotics operations; (2) Pate had no visible legal means of earning large sums of cash; (3) Pate, as is common among those who earn money by selling illegal drugs, had a pattern of pur-

into the complaint. *Cf. $38,000*, 816 F.2d at 1548 n. 23 (considering affidavit filed in support of complaint in analysis of adequacy of complaint); *Pole No. 3172, Hopkinton*, 852 F.2d at 639–40 (same). As Daniel points out, this declaration was sealed, and thus not available to him, until after he filed his motion for judgment on the pleadings.)

Supplemental Rule E(2)(a) requires that complaints in rem, including forfeiture complaints, *see supra* note 2, "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." This court has interpreted this particularity requirement to mandate that the complaint "allege sufficient facts to provide a reasonable belief that the property is subject to forfeiture: in particular, that the government has probable cause to believe that a substantial connection exists between the property to be forfeited and the exchange of a controlled substance." *$38,000*, 816 F.2d at 1548; *see also United States v. Real Property and Residence at 3097 S.W. 111th Ave., Miami, Fla.*, 921 F.2d 1551, 1554–55 (11th Cir. 1991) (forfeiture complaint under section 881(a)(6) must contain "factual tracing" that supports the government's allegation of probable cause); *4880 S.E. Dixie Highway*, 838 F.2d at 1564; *United States v. $39,000 in Canadian Currency*, 801 F.2d 1210, 1219 (10th Cir.1986) ("the complaint ... must allege specific facts sufficient to support an inference that the property is subject to forfeiture").

We have held, under these standards, that a "bare bones" complaint, which "contain[ed] not even a whiff of evidence" linking the currency to an illegal drug transaction, was inadequate to justify forfeiture, because it did not "provide claimants with notice of the basis for the government's contention that it has the requisite probable cause." *$38,000*, 816 F.2d at 1548 (complaint alleged that government had seized the currency at issue at airport, recited language of several subsections of section 881(a), and stated—with no supporting facts—that government had probable cause to seize currency); *see also 4880 S.E. Dixie Highway*, 838 F.2d at 1563; *$39,000*, 801 F.2d at 1210; *Pole No. 3172, Hopkinton*, 852 F.2d at 638–41.

The complaint in this case, however, was considerably more specific; it alleged that a suspected drug dealer with insufficient income reported on his tax returns to cover the sum of his purchases bought the dozer with cash, and that the transaction was carried out in the name of a nominee, Daniel's brother. From these allega-

tions, Daniel could, and did, begin an investigation of the facts and frame a responsive pleading without moving for a more definite statement. Moreover, the complaint clearly told any potential claimant to the dozer, including Daniel, that the basis for the Government's claim of probable cause for forfeiture was that Pate bought the dozer with drug money for himself and placed it in Bobby Daniel's name to conceal his ownership.

The complaint's failure to state explicitly, in the paragraph describing the dozer, *see supra* note 4, that the dozer was either purchased with proceeds of Pate's illegal drug activity or was forfeit pursuant to section 881(a)(6) does not make the complaint insufficient; it explicitly states in paragraph 1 that "[t]his action is a civil action for forfeiture pursuant to [21 U.S.C. § 881(a)(6)]." The obvious inference from this statement, when read in conjunction with the language of section 881(a)(6) and with the allegations of the complaint that Pate, an active drug importer, bought the dozer with cash, is that the dozer is forfeit because it was acquired with the proceeds of drug sales.

Moreover, the allegation in the complaint that Pate's purchases amounted to more than the income reported on his tax returns is sufficient; the complaint need not allege that Pate's *only* source of cash was drug sales. It is conceivable that Pate received some money from a legitimate source that he was not required to report on his income tax returns—an inheritance, for instance—which he used to purchase the dozer. In a complaint for forfeiture under section 881(a)(6), however, the government is not required to prove that the legitimate assets of the purchaser of the property are insufficient to support the amount of money he has spent, but only to show probable cause for the belief that the property was purchased with drug money. When viewed in a commonsense way, a suspected drug dealer's failure to report income on his tax return suggests that the source of that income was illegal activity; when the government's complaint makes this suggestion, the government need not exclude every possibility of a legitimate source for the money in order to show probable cause.

29. Daniel, as the moving party, had an "initial responsibility" to inform the court of the basis for his motion; he fulfilled this burden by pointing out to the court that he believed that the government's evidence, as a matter of law, was insufficient to show probable cause. *See supra* note 24. The burden of demonstrating probable cause then shifted to the Government, the nonmoving party with the burden of proof on this issue.

chasing valuable objects, like tractors and dozers, with cash and placing them in others' names; (4) Pate was a life-long friend and associate of the claimant; (5) Pate bought the dozer at issue with cash and placed it in the name of a nominee, Bobby Daniel, the claimant's brother; and (6) Pate used the dozer for his own purposes, kept it on his property, and led others to believe that it was his. *See United States v. 228 Acres of Land and Dwelling Located on Whites Hill Road,* 916 F.2d 808, 812–14 (2d Cir.1990) (government showed probable cause for forfeiture of property in part because "[t]he district court could reasonably infer that it was unusual to pay for expensive property such as ... heavy construction equipment with cash"), *cert. denied,* —— U.S. ——, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991); *cf. Single Family Residence,* 803 F.2d at 630 ("people engaged in illegal activities often attempt to disguise their interests in property by placing title in someone else's name" (quoting *United States v. One 1977 36 Foot Cigarette Ocean Racer,* 624 F.Supp. 290, 294–95 (S.D.Fla.1985)).

That we have relied on certain types of evidence—such as admissions to co-conspirators, *see Single Family Residence,* 803 F.2d at 629, or the presence of a very large amount of cash, *see $4,255,000,* 762 F.2d at 903–04—to find probable cause in other cases does not mean that the lack of such evidence in this case is fatal to a probable cause determination. We judge probable cause with common sense and an awareness of the many methods drug dealers use to conceal their assets; in this case, where the Government demonstrated that a convicted drug dealer purchased a valuable piece of equipment with $65,000 cash, placed it in the name of a nominee, and used it for his own purposes, we conclude that the Government has shown probable cause.[30]

### 3.

■■■ Even though the Government has shown probable cause, we may affirm the district court's grant of summary judgment to Daniel if, taking all the evidence in the record in the light most favorable to the Government, no reasonable jury could find that the dozer was purchased with the proceeds of an illegal drug transaction. A claimant under section 881(a)(6) may satisfy his burden of proof in two ways, either by rebutting the government's evidence that the property was the proceeds of illegal drug activity or by showing that he was an innocent owner who was unaware of the property's connection with drug sales. *Single Family Residence,* 803 F.2d at 629; *$4,255,000,* 762 F.2d at 906. Daniel has chosen the former method, attempting

---

**30.** This case is distinguishable from *United States v. Twenty (20) Cashier's Checks, Having the Aggregate Value of Two Hundred Thousand ($200,000) Dollars in U.S. Currency,* 897 F.2d 1567 (11th Cir.1990) (per curiam), in which this circuit held that the government had not established probable cause. In that case, the government submitted an affidavit alleging that the claimant and his wife were convicted in absentia in 1982 for a 1981 drug transaction. The authorities later captured and incarcerated the claimant; his wife remained a fugitive. The government seized the cashier's checks at issue, which had been withdrawn from the wife's Swiss bank account, from the wife's sisters in 1986 when they attempted to pass through customs without declaring the checks. The sisters told Drug Enforcement Administration officials that they had met the claimant's wife in Switzerland, where she had withdrawn the funds from her account and instructed her sisters to deposit the checks in a Panama bank. Moreover, the wife, on her arrest in 1981, told agents that she was an unemployed housewife.

This affidavit did not establish probable cause because it contained no "direct factual evidence" that the cashier's checks were related to any illegal drug transaction. *Id.* at 1570 (exhibit). Instead, the government presented evidence of only one federal drug offense to which the cashier's checks might be connected; this offense occurred *five years* before the government seized the checks. Moreover, the government presented no evidence of any connection whatsoever between that offense and the checks; indeed, the government even provided evidence (in support of its alternative argument that the claimant lacked standing) suggesting a legitimate source for the money. The government's evidence clearly was insufficient to suggest that the checks were the proceeds of the 1981 drug sale, and the government made no allegation of additional illegal activity—such as, for instance, the claimant's wife's continued involvement in drug trafficking—that might render the checks forfeit. In this case, on the other hand, the Government showed that Pate was actively importing drugs when he bought the dozer.

to show that the funds used to purchase the dozer were not the proceeds of illegal drug transactions, but were earned by his logging business.

■ Our initial inquiry is whether Daniel, as the moving party and the party with the burden of proof on this issue, has introduced credible evidence showing that no reasonable jury could fail to find that Pate bought the dozer with Daniel's money.[31] To meet this initial responsibility on summary judgment, Daniel introduced his first affidavit and his sister-in-law's affidavit, in which both he and Dorothy swear to his version of the transaction. These affidavits, however, contain contradictions and omissions that cast doubt on their credibility; a reasonable jury certainly could choose to disbelieve Daniel's story. For instance, in Daniel's answer to the Government's complaint, he specifically denied that the dozer was purchased *"by or for"* Pate (emphasis added). A reasonable inference from this statement is that Pate had nothing to do with the purchase of the dozer. In his first affidavit, however, Daniel admits that Pate did buy the dozer after all, but as Daniel's agent. This affidavit flatly contradicts Daniel's answer, and

casts serious doubt on his credibility.[32] At the least, the inconsistency between Daniel's answer and his affidavit demonstrates the possibility that Daniel was initially reluctant to provide details about his relationship with Pate. A reasonable jury could infer that this reluctance implied a desire to hide something.[33]

Daniel's first affidavit, moreover, contains an internal inconsistency that casts doubt on his credibility. Consider this: Pate worked closely with Donald Daniel, buying, operating, maintaining, and trading-in Daniel's dozers; Donald Daniel gave Pate a large sum of money in cash for the purchase of a new dozer; Pate went out and purchased the dozer for Donald Daniel but put the bill of sale in *Bobby Daniel's name.* A reasonable jury certainly might find it difficult to believe that Pate could have worked so closely with Donald Daniel, taken $65,000 in cash from Donald Daniel expressly for the purpose of buying a new dozer, and then mistakenly put the bill of sale in someone else's name.[34]

Dorothy Daniel's affidavit also presents credibility questions. For instance, she indicates that she attempted to keep careful business records. She meticulously cor-

31. That Daniel has shown that he has legal title to the dozer is insufficient. *Single Family Residence,* 803 F.2d at 630.

32. Daniel, in his en banc brief, attempts to explain away this inconsistency by asserting that his answer was "nothing more than a pleading filed by counsel in the press of business," which, although perhaps "unartfully drafted," was not evidence submitted in support of Daniel's motion for summary judgment. Fed.R.Civ.P. 56(c), however, directs a district court to consider the pleadings, as well as the evidence in the record, in assessing a motion for summary judgment.

33. This inference—that Daniel, in his answer, may have been attempting to hide something— is strengthened by the details Daniel provided when he decided to be more forthcoming about his dealings with Pate. In Daniel's two affidavits, he stated that he trusted Pate with $65,000 in cash to purchase a vital piece of heavy equipment, and allowed Pate to operate this valuable piece of machinery without compensation, to use it for his own purposes, and to store it on his property. From these details, a reasonable jury certainly could infer that Daniel and Pate were close friends or associates. This inference conflicts with the inference from the answer

that Pate had nothing to do with the purchase of the dozer. Moreover, from this close relationship, the jury could infer that Daniel would probably know that Pate was a drug dealer and Daniel (in his answer) would want to hide his association with Pate while making his claim for the dozer.

34. Daniel argues that there is no evidence that *Pate,* intentionally or mistakenly, put the bill of sale in Bobby Daniel's name. Instead, Daniel suggests that the dealer who sold the dozer to Pate mistakenly assumed that Bobby Daniel was to own the dozer when Pate told the dealer to mail the bill of sale to Dorothy Daniel (Bobby Daniel's wife). This is a reasonable inference from the evidence in favor of the claimant. Daniel also argues that if he had entered a scheme to buy a dozer for Pate with Pate's money, Pate simply would have given Daniel $65,000, and Daniel would have made the actual purchase. Again, this is a reasonable inference, which a jury might choose to make in favor of the claimant. On summary judgment, however, we draw inferences in favor of the nonmoving party, the Government, to determine the existence of a genuine issue of material fact. *See supra* p. 1437.

rected the bill of sale problem, having Bobby sign a statement, carefully erasing his name, and retyping Donald's. In addition, she indicated that the dozer was depreciated in the business' books. Her story of meticulous recordkeeping, however, is inconsistent with a casual transfer of $65,000 in cash to Pate without any information about the transaction's purpose, let alone any record of it until the mistaken bill of sale arrived by mail. Moreover, if Dorothy truly kept careful books, then her records would have included information about the previous dozer purchased by Pate for Daniel, which they traded in for the new dozer, as Daniel describes in his affidavit. Dorothy, however, makes no mention of the history behind the dozer transaction. Moreover, Dorothy provided no copies of tax returns or other documentary evidence to support her claim that Daniel's business depreciated the dozer.

At most, the evidence Daniel submitted in support of his motion for summary judgment demonstrated a possibility that the dozer was purchased with his money. Daniel's suggestion of such a possibility—with evidence that the jury reasonably may choose to disbelieve—is insufficient to meet the claimant's strong burden as the party moving for summary judgment and the party with the burden of proof at trial. *Cf. $41,305,* 802 F.2d at 1345 (the "possibility of an innocent source" for currency found in house of a drug dealer "does not constitute a preponderance of evidence defeating forfeiture").

If we assume for the sake of argument, however, that Daniel has shown the absence of a triable issue of fact, the burden on summary judgment shifts to the nonmoving party, the government, to demonstrate that such an issue exists. To meet its burden, the Government placed before the court its verified complaint,[35] Brunson's declaration,[36] and McArthur's affidavit. Daniel contends that we may not consider much of the Government's evidence on summary judgment, as it is inadmissible opinion and hearsay. *See* Fed.R.Civ.P. 56(e) (affidavits submitted in connection with motion for summary judgment "shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence"). The nonmoving party, however, need not "produce evidence *in a form* that would be admissible at trial ... to avoid summary judgment," *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; instead, its evidence must be "reduc[ible] to admissible evidence," *id.* at 327, 106 S.Ct. at 2555.

We do not decide whether we may consider much of the Government's evidence under this standard.[37] We hold that the following evidence submitted by the Government, which is probably reducible to admissible evidence—and which, moreover, is *admitted* by the claimant—is sufficient to show a triable issue of fact. First, McArthur's affidavit stated that Pate pled guilty to managing a continuing criminal enterprise involving drugs. Second, Brunson stated, presumably from personal knowledge gained through investigation, that Pate purchased the dozer with cash.

**35.** A verified pleading may be treated as an affidavit on summary judgment if it satisfies the standards of Fed.R.Civ.P. 56(e). *See Gordon v. Watson,* 622 F.2d 120, 123 (5th Cir.1980).

**36.** Brunson's declaration was not sworn before a notary, but was executed in accordance with 28 U.S.C. § 1746 (1988), which provides:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same ..., such matter may, with like force and effect, be supported, evidenced, established, or proved by the un-

sworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the [form specified by the statute].

The court on summary judgment may consider a declaration executed in accordance with this statute as an affidavit. *See United States v. 225 Cartons, More or Less, of an Article of Drug,* 871 F.2d 409, 414 n. 4 (3d Cir.1989); *Nissho–Iwai Am. Corp. v. Kline,* 845 F.2d 1300, 1306 (5th Cir.1988).

**37.** Of course, the government's evidence need not be admissible at trial to form the basis of our probable cause determination. *See supra* p. 1440.

Third, Brunson stated that Pate had no visible means of legally earning large sums of cash. Fourth, McArthur swore that he personally had seen photographs of Pate driving the dozer and of the dozer parked on Pate's property; a reasonable inference from McArthur's statement is that Pate exercised control over the dozer.

Daniel never contested that Pate was a convicted drug dealer with no visible means of legally earning large sums of cash. Moreover, he admitted, in his affidavit, that Pate purchased the dozer with cash.[38] Finally, he admitted, in his second affidavit submitted in response to McArthur's affidavit, *see supra* p. 1444, that Pate exercised control over the dozer: Daniel explained that, because Pate operated the dozer in Daniel's logging business without pay and was responsible for transporting it to jobs, Daniel allowed him to use it for his own purposes and store it on his property.

These uncontested facts—that a convicted drug dealer with no visible means of legally earning large amounts of cash bought the dozer with cash and, after purchase, exercised control over it—reasonably suggest that Pate bought the dozer with the proceeds of drug transactions and that Pate owned the dozer. Of course, Daniel provides an explanation of these facts under which the dozer would not be forfeit; the jury certainly may choose to believe Daniel's story. Whether to infer from the Government's evidence that the dozer is Pate's or to believe Daniel's version of the transaction is, however, a matter for the jury, not for the district court on summary judgment.

## III.

We hold that the district court erred by granting summary judgment to Daniel. The Government has shown probable cause for forfeiture, and there is a genuine issue of material fact as to whether the dozer was acquired with the proceeds of an il-

legal drug transaction. Accordingly, we VACATE the summary judgment and REMAND the case for further proceedings not inconsistent with this opinion.

VACATED and REMANDED.

HATCHETT, Circuit Judge, dissenting, in which MORGAN, Senior Circuit Judge joins:

I agree with the majority that this court has *in rem* jurisdiction over the dozer.[1] *See United States v. One (1) 1983 Homemade Vessel Named Barracuda,* 858 F.2d 643 (11th Cir.1988). I do not agree, however, with the majority's ruling on the summary judgment issue. In this case, the government simply failed to produce sufficient evidence. Therefore, I respectfully dissent.

Donald K. Daniel (Daniel), the claimant, has been in the logging business since 1979, and has never been accused of involvement in illegal drug transactions. J.C. Pate, Jr. and Daniel are lifelong friends, and Pate frequently operates dozers for Daniel. During July of 1983, Daniel purchased a used International Model TD15D dozer from Pate for $16,000 and used it to build access roads for his logging trucks. When the dozer needed repairs, Daniel asked Pate to haul the dozer to a repair shop for the necessary repairs. When the repairs were estimated to be more than the value of the dozer, the dealer accepted the dozer as a trade-in on a new TD12 dozer.

In August, 1983, Daniel gave Dorothy Daniel, his sister-in-law and bookkeeper, $65,000 in cash to purchase the new dozer. Dealing in cash for such a purchase was not strange because the evidence in this case indicates that Daniel routinely did business in cash. Dorothy delivered the cash to Pate, who purchased the dozer. Nine days later, Dorothy Daniel received the bill of sale and noticed that the bill of sale showed the purchaser as Bobby Daniel, Dorothy's husband. She contacted the

---

38. His answer, however, states that Pate did not purchase the dozer.

1. As the majority points out in its footnote 14, Daniel intentionally did not remove the dozer from the jurisdiction of the court; consequently, jurisdiction is not a real concern in this case.

seller and had the bill of sale changed to name Donald Daniel as purchaser. Donald Daniel placed the dozer on the books of his logging business and depreciated it on the business's state and federal income tax returns.

In April, 1988, the government filed a civil complaint for forfeiture of real properties belonging to Jackie D. Wilson, J.C. Pate, Jr., and Rita Pate. The complaint also sought the forfeiture of $35,350.22 in cash and one International Hough Model TD12 dozer with all appurtenances and equipment—Donald Daniel's dozer.

Paragraph (1) of the complaint alleged that the properties were subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). Paragraph 7 of the complaint, however, which relates to the dozer, makes no reference to the controlling statute or to the theory supporting the forfeiture pursuant to the statute. Paragraph seven (7) of the complaint states:

> 7. On or about August 9, 1983, One (1) International Hough Model TD12 Dozer equipped with D–2 hydraulic straight blade with hydraulic tilt, rops canopy, 22″ track shoes, engine enclosures with perforated hood, back up alarm and all other standard equipment (S/N 729) was purchased with $65,000.00 in cash plus trade in by J.C. Pate, Jr. On or about May 16, 1984, a new International Hough Ripper Model 12RS was purchased for this dozer by J.C. Pate, Jr. for $12,025.70 in currency. The transactions were carried out in the name of Bobby Daniels. (R. 1–1–1, 8)

This crucial paragraph regarding the dozer alleges purely innocent conduct. It does not even allege that the dozer was purchased with illegal drug proceeds, nor does it allege that the dozer was used in drug trafficking. Just as startling, the complaint fails to allege that this dozer is subject to forfeiture under any provision of law. The government expressly referred to the statute and to a substantial connection between the described property and illegal drug transactions concerning each of the other properties listed in the complaint. Obviously, the government's case, as to the dozer, was over at this pleading stage, as the district court found. Under no law, theory, or stretch of imagination can paragraph 7 be held to be a sufficient allegation for forfeiture of property.

Daniel filed an Answer to the Complaint and a Motion for Judgment on the Pleadings which the district court treated as a Motion for Summary Judgment, supported by two affidavits showing that he purchased the dozer for his logging business with legitimate funds. The government countered Daniel's affidavits with an affidavit from a Special Agent of the Federal Bureau of Investigation (FBI), which stated that Pate purchased the dozer for Daniel with cash, and that Pate had been convicted of illegal drug trafficking. The FBI agent's affidavit further stated that Pate had shown a pattern of buying real and personal property in the name of other individuals, that he was a close associate of Donald and Bobby Daniel, and that his $65,000 cash purchase of the dozer was characteristic of individuals involved in illegal drug activity.[2]

Finding no genuine issue of material fact and that Daniel was entitled to judgment as a matter of law, the district court granted Daniel's Motion for Summary Judgment. The district court further found that the government's complaint did not show probable cause because the government failed to allege that Daniel acquired the dozer as a thing of value in exchange for a controlled substance, or that the dozer was traceable to such an exchange, as required under 21 U.S.C. § 881(a)(6).[3] Ad-

---

**2.** If such an affidavit is sufficient for forfeiture against Donald Daniel, note that it would be sufficient against any friend or associate of Pate.

**3.** I write this dissent because of my inability to convince the majority of my colleagues that the statute, according to our case law, means what it (21 U.S.C. § 881(a)(6)) so clearly says:

> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person *in exchange for a controlled substance* in violation of this subchapter, all proceeds *traceable to such an exchange*, and all moneys, negotiable instruments, and securities *used or intended to be used to facilitate any violation of*

ditionally, the district court found that the FBI agent's affidavit was insufficient to create a genuine issue of material fact when compared with Daniel's affidavits regarding the purchase of the dozer. Finally, the district court found no substantial evidence that Daniel or his bookkeeper filed a false affidavit and no substantial evidence to support a reasonable inference that Pate owned the dozer.

Because I believe the district court's ruling on summary judgment is correct, I would affirm that court's decision. Federal Rule of Civil Procedure 56(c) permits a district court to award summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Interpreting this broad and troublesome language has been the subject of several United States Supreme Court decisions as well as Eleventh Circuit opinions. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats and Clark, Inc.*, 929 F.2d 604 (11th Cir.1991); *Everett v. Napper*, 833 F.2d 1507 (11th Cir.1987). Most instructive on the burden of proof under rule 56(c) is *Celotex Corp. v. Catrett*.

In *Celotex*, the Supreme Court examined whether a moving party must affirmatively establish its own claims or negate the claims of the nonmoving party to prevail on summary judgment. The Court stated:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the

absence of a genuine issue of material fact.... [W]e find no express or implied requirement in rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.

*Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553.

Daniel, the party seeking summary judgment in this case, met his initial responsibility by informing the district court that the government failed to establish probable cause for the forfeiture. Specifically, Daniel argued that the government had not alleged and could not show a substantial connection between the dozer and an illegal exchange of a controlled substance, as is required under section 881(a)(6).

In demonstrating a substantial connection between the property and illegal drug transactions, the government is not required to show a relationship between the property and a specific drug transaction. *United States v. $4,255,000*, 762 F.2d 895 (11th Cir.1985). But, the government must show a connection. The government's burden of demonstrating probable cause requires "less than prima facie proof but *more than mere suspicion."* *United States v. One 1978 Chevrolet Impala*, 614 F.2d 983, 984 (5th Cir.1980). Suspicion is not good enough.

In this case, the government attempted to establish probable cause by showing that: (1) Pate had recently pleaded guilty to managing a continuing criminal enterprise involving illegal drugs; (2) Pate was a lifelong friend of Donald Daniel; (3) Pate had shown a pattern of purchasing real and personal property with proceeds from illegal drug transactions in others' names; (4) photographs showed the dozer parked at Pate's residence and Pate driving it; and (5) the dozer was purchased with cash, a common practice of individuals involved in illegal drug activities.

Daniel contradicted the government's weak evidence on probable cause with his

---

*this subchapter,* except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner

to have been committed or omitted without the knowledge or consent of that owner. [Emphasis added.]

sworn affidavit and that of his bookkeeper, Dorothy Daniel. These affidavits proved that the bill of sale title to the dozer was in Daniel's name, that the dozer had been purchased with legitimate funds from Daniel's logging business, and that it was used to build access roads for the logging business. Furthermore, Daniel's affidavits stated that he often allowed Pate to use the dozer in exchange for Pate's uncompensated work for the logging business. Moreover, Dorothy Daniel's affidavits corroborated Daniel's account of the transaction and further stated that most of the transactions in Daniel's logging business, including purchases of heavy equipment, were handled on a cash basis.

The government countered Daniel's allegations by offering an affidavit from a Special Agent of the FBI. This affidavit failed to show any connection between the dozer and Pate's illegal drug transactions. Likewise, the government failed to offer any evidence to show that Daniel's logging business was merely a front for Pate's illegal drug trafficking. Furthermore, the government failed to show that Daniel's logging business could not have legitimately produced $65,000 in cash. Therefore, the government, the party with the burden of proving probable cause did not sufficiently show probable cause for the forfeiture. The government's evidence showed nothing more than mere suspicion.[4] consequently, Daniel's affidavits sufficiently established that no genuine issue of material fact existed regarding probable cause for the forfeiture. Contrary to the majority's contentions, Daniel did not have to negate the government's probable cause showing to prevail on summary judgment. As the Supreme Court stated in *Celotex:*

> Whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in rule 56(c), is satisfied.

477 U.S. at 323, 106 S.Ct. at 2553.

The majority correctly enunciated the burden of proof on summary judgment as required under *Celotex Corp. v. Catrett.* The majority then assumes that the government met its burden of proving probable cause when it showed (1) Pate was a convicted drug dealer who had engaged in an extensive narcotics operation; (2) Pate had no visible legal means of earning large sums of cash; (3) Pate, as is common among those who earn money by selling illegal drugs, had a pattern of purchasing valuable objects, like tractors and dozers, with cash and placing them in others' names; (4) Pate was a lifelong friend and associate of Daniel; (5) Pate bought the dozer with cash and placed it in the name of a nominee, Bobby Daniel, the claimant's brother; and (6) Pate used the dozer for his own purposes, kept it on his property, and led others to believe that it was his.

This evidence tends to indict Pate, not Daniel's legitimate ownership of the dozer. Daniel had not been implicated in drug trafficking. He showed a legitimate source for the funds used to purchase the dozer and a legitimate business purpose for its use. Nonetheless, the majority fails to address Daniel's affidavit as an allegation against the government's showing of probable cause. Instead, the majority assumes probable cause (a connection) and immediately shifts to Daniel the burden of proof. This leap resulted in the majority placing a heavy burden on Daniel to not only negate the government's case against Pate, but to dispositively show that the dozer was purchased with legitimate funds. Neither rule 56(c) nor *Celotex* can be read to so shackle a party moving for summary judgment in civil forfeiture cases.

Furthermore, the majority ignores the well-established principle of law that forfeitures are not favored and should only be enforced when they are within the spirit

---

**4.** We must not lose sight of the fact that the government never alleged a connection between drugs and the dozer.

and the letter of the law. *United States v. One Ford Coach,* 307 U.S. 219, 226, 59 S.Ct. 861, 864–65, 83 L.Ed. 1249 (1939). If the evidence offered by the government in this case is sufficient to cause the forfeiture of property, the property of any friend or associate of a drug trafficker is subject to forfeiture, without the government alleging or proving a connection between the property and illegal drugs.

Unfortunately, this case, which was not en banc worthy in the first place, has been used to completely confuse our law regarding summary judgments and civil forfeitures. This is one time when an easy case has made bad law.

BIRCH, Circuit Judge, dissenting, in which CLARK, Circuit Judge, joins:

I fully concur in the dissent of Judge Hatchett and, respectfully, add a few further words of concerned dissent to the majority opinion. All of the reasons voiced by the majority to explain, in excruciating and argumentative detail, why the district court erred in finding that the government dropped the ball in this case advocate eloquently for affirming the summary disposition in favor of the claimant.

The majority concedes the first of the government's many fumbles in footnote 28. However, utilizing judicial instant replay review, it ignores the manifestly deficient affidavit and declaration submitted by the government. The trial judge correctly called it like the government presented it. What the majority presents now, from its instant replay perspective, excuses the government's unsatisfactory performance before the trial court and affords the government another shot at scoring; one that it has not earned, particularly in view of its proper heavy burden in forfeiture cases. Given the government's deficient performance before the district court, the grant of summary judgment against it was well-earned. The majority's grant of a second chance is an ill-deserved gift.